John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

*Attorneys for Las Vegas Jaycees
Senior Citizen Mobile Home Park*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>                      Debtor. | Case No.: 25-10340-nmc<br>Chapter 13<br><br>**JAYCEES SENIOR CITIZEN MOBILE HOME PARK'S OPPOSITION TO MOTION TO HOLD CREDITOR LAS VEGAS JAYCEES SENIOR CITIZEN MOBILE HOME PARK IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY UNDER §362(a) AND FOR ACTUAL DAMAGES, EMOTIONAL DISTRESS DAMAGES, PUNITIVE DAMAGES AND ATTORNEY FEES** |

## 1.  Introduction

Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees"), through its counsel

Hutchison & Steffen, PLLC, opposes the debtor's Motion to Hold Las Vegas Jaycees Senior

Citizen Mobile Home Park in Contempt for Violation of the Automatic Stay under §362(a) and

for Actual Damages, Emotional Distress Damages, Punitive Damages and Attorney Fees (the

1    "Motion") because it is based on false statements concerning the activities of Jaycees and its

2    manager and mis-statements of the applicable law.

3        Jaycees has not violated the automatic stay because (i) the manufactured home was

4    transferred from the Debtor estate in December 2024, meaning that the home is no longer party

5    of the Debtor's estate; (ii) even if the manufactured home were owned by Debtor and therefore

6    part of the Debtor's estate, actions to maintain or perfect liens under Chapter 108 of the Nevada

7    Revised Statutes, other than the actual foreclosure of the lien, is not a violation of the automatic

8    stay based on the exception set forth §362(a)(3) and §546(b); (iii) the judgment entered in the

9    Las Vegas Justice Court per this Court's order against Lichtenstein is not a violation of the

10   automatic stay because it does nothing more than a judgment would do if it did not have the

11   language complained of; and (iv) the other allegations concerning the management of Jaycees

12   are simply false and/or speculative accusations that cannot be used to show any violation of the

13   stay.

14       Debtor has placed Jaycee's in a difficult situation because she continues to reside in the

15   Park despite being evicted for a non-monetary breach of her lease and nuisance behavior for

16   more than two months.  The Court has not yet issued the order that would have clarified that the

17   automatic stay did not apply to the actual enforcement of the writ of restitution or that the stay

18   would be lifted for those purposes.  Further, she transferred her interest in the manufactured

19   home to a non-resident in violation of her now terminated lease.  She has now stated that the

20   transfer was an accident, but she has yet to do anything to get the title of the manufactured home

21   back in her name.  Jaycees cannot sit idly by and not seek to protect its rights to property that is

22   not even now within the protection of the bankruptcy court.

23

24

25

26

27

## 2.    Statement of Facts

Jaycees is a non-profit entity that owns a mobile home community located at 505 West Harmon Avenue, Las Vegas, Nevada 89103 (the "Park").  Debtor is an evicted resident at the Park who is still living at the manufactured home that sits on Space #305 (the "Premises"), pending this Court's order confirming that the eviction can proceed.

In order to live in the Park, Lichtenstein executed a Mobile Home Lot Lease.  The Mobile Home Lot Lease provides that with limited exceptions not relevant here, "the Resident must be the sole owners or co-owner of the mobile home.  *See* Mobile Home Lot Lease, § 16(A), attached as Exhibit B.  Further, the Mobile Home Lot Lease provides that "if the Resident sells or otherwise disposes of his/her mobile home to a buyer or occupant who is not eligible for tenancy in the mobile home park . . . the selling or disposing Resident or his/her legal representative must notify management of the date of the sale or disposition and the name of the buyer or recipient and the mobile home must be removed from the park within forty-five (45) days) after the close of the sale or disposal." *Id.* § 16(A).  Further, "Space rental must be paid to the Management for the full time the mobile home occupies space in the mobile home park." *Id.*

Lichtenstein also executed a Mobile Home Lat Rent/Storage Agreement Lease Addendum (the "Addendum") which provides that:

> Should a resident chose [sic] to move out of the community and/or be evicted from the community, the person on the lease or the responsible party is then advised the elevated storage rent rates goes [sic] into effect immediately.  This being at the rate of two (2) times the current space rent plus **One Hundred dollars ($100.00)** which is due on the first of the month, with late charges of **Twenty-Five ($25.00)** incurring following the close of business the fifth day of the month.  Failure to comply with the elevated Rent Storage Agreement will result in the mobile home being subject to a Landlord Lien with all rent, late, and legal fees to be paid in full in order to reinstate the Storage Rent Agreement and have the Landlord Lien removed.

*See* Addendum, included as part of Exhibit B.

The lot rent for the space prior to the eviction proceedings was $255 per month. *See* Declaration of Robert Deken, ¶ 5. attached as Exhibit A. Therefore, the increased storage rent would be an additional $355 per month. *Id.* at ¶ 13.

Jaycees commenced eviction proceedings against debtor in or about March 2024 based on Debtor's actions in the Park that violated her lease agreement, the Park's rules, and Chapter 118B of the Nevada Revised Statutes that governs leases in spaces in mobile home parks and manufactured communities. The Complaint alleged that the Debtor had committed acts that violated criminal statutes concerning the exploitation of an elderly person under Nevada Revised Statute 200.5092(3), which also constitutes a nuisance and is a basis for terminating a lease and seeking unlawful detainer under Nevada Revised Statute 118B.200(1)(f).

On or about October 23, 2024, and then again on November 12, 2024, the Las Vegas Justice Court held a bench trial in the unlawful detainer matter. On December 17, 2024, the Justice Court issued a minute order finding that Debtor was a nuisance in the Park as defined in NRS 118B.190(1)(b) and NRS 118B.200(1)(f) and specifically found that Debtor had exploited an older person in the Park by obtaining control of their money, assets and property and converting that property assets or money. *See* Minute Order, previously attached as Exhibit 3 to Emergency Motion for Order Finding Automatic Stay Does Not Apply to Permanent Writ of Possession Issued Prior to the Bankruptcy Petition or Alternatively for Order Lifting Automatic Stay on Order Shortening Time (the "Emergency Motion") (Doc. 8, at Page 18 of 21).

On December 21, 2024, only a few days after the Minute Order was issued, Lichtenstein executed documents that transferred her ownership interest entirely to her daughter Susan Brown, who is not eligible to live in the Park. *See* Certificate of Title Signed by Lichtenstein on December 21, 2024, attached as Exhibit C. The Certificate of Title Signed by Lichtenstein was

submitted to Nevada's Manufactured Housing Division for processing and issuance of new title shortly thereafter.  *See* Deken Decl., ¶ 11, Ex. A.  Sometimes it takes MHD several weeks or even months to process the documents and issue a new title.  A new title was issued in March 2025.  *See* Deken Decl., ¶ 14; Certificate of Title, attached as Exhibit G.

On January 13, 2025, the Justice Court issued a Permanent Writ of Restitution ordering that the Premises be restored to Jaycees.  *See* Exhibit 4 to Emergency Motion (Doc. 8, at pages 30-31).  Lichtenstein has therefore been evicted from living at the Park and is only still remaining there because of the bankruptcy filing as the parties await the Court's order allowing the eviction proceedings to be completed.

The combination of the finalized and unappealable eviction and the fraudulent transfer of the home to a nonqualifying owner are sufficient to trigger the increased storage rent as of January 1, 2025.  Jaycees began to add the increased storage rent to the ledger as of that date.  *See* Ledger, attached as Exhibit D.

In the Motion, Debtor makes several completely false and unsubstantiated allegations concerning Jaycees and its manager, Robert Deken, which are all refuted by Deken in the attached declaration.  *See* Deken Decl., ¶¶ 18-23, Ex. A.  These include false allegations that the criminal court told Lichtenstein she had to "turn over the mobile home," that Deken contacted or harassed Lichtenstein, and has claimed that Deken has told her he could pick up her home for cheap and she would have to do a fire sale.  None of these allegations have any substantial support.  Indeed, the opposite is true.  *Id.*

Lichtenstein has been harassing the management in an effort to get them to agree to allow her to stay in the park for an indefinite period of time, even attempting to bribe management.  *See* Deken Decl., ¶ 21, Ex. A.  She has made death threats and other similar threats to Deken.  *Id.*

¶¶ 25-27.  She has made other outlandish allegations that are hardly worth responding to other than simply denying them as unsubstantiated.  *Id.* ¶ 24.

Indeed, it is clear that this bankruptcy was only filed in an attempt to allow her to stay in the Park and to evade any effort to collect against the manufactured home that is not even titled in her name anymore.  Indeed, the debtor admits that she "filed these Chapter 13 proceedings in order to sell my mobile home since I do not have any money to move somewhere else."  *See* Declaration of Debtor (Doc. 43, at page 2).  At the same time, she cannot sell her home because it is not even in her name.  Her motives are clear.  She is attempting to avoid an eviction for her illegal and nuisance behavior that is currently the subject of criminal proceedings.

Lichtenstein's actions have placed Jaycees in a difficult situation.  They have a debtor who refuses to vacate the Premises after a non-monetary eviction order and writ and who has fraudulently transferred the manufactured home she is living in to another who is claiming the right to sell the Property all while it still sits in storage on Jaycees lot.  Jaycees has a right to lien the manufactured home that remains on its lot for past due rents under the lease and the storage addendum without violating the automatic stay, especially where the home is not even titled to the debtor.

Even if the home were titled to the debtor, Jaycees is entitled to maintain and perfect its statutory lien rights under both Nevada law and the bankruptcy code.  Although it appears that the notice of lien pursuant to NRS 108 was issued prematurely on the home as it failed to account for the pre-paid base rent, Jaycees is within its rights to place a lien on the home for accumulated unpaid rent in accordance with NRS 108. Jaycees will agree rescind the current lien filig until proper time under Nevada's statutory provisions in Chapter 108 of the Nevada Revised Statutes, but intends to file a corrected lien in April.  The lien notice, even if it were inaccurate or

not valid because it was prematurely filed, is not a violation of the stay because the notice of lien is against a manufactured home not titled to the debtor and, even if it were titled to the debtor such liens are an exception to the stay under § 362(b)(3) and § 546(b) of the Bankruptcy Code.

### 3.    Legal Argument

**A. The notice of lien here does not violate the automatic stay because the debtor does not have title to the manufactured home.**

Section 362(a) of the Bankruptcy Code provides that a petition for bankruptcy under any of the applicable titles operates as a stay of "any act to create, perfect, or enforce a lien against property of the estate." 11 U.S.C.A. § 362(a)(3). It also stays "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." *Id.* § 362(a)(2).

However, the stay only applies to property that belongs to the debtor estate at the time of the alleged act. *In re Badea*, No. 2:15-BK-10638-GS, 2018 WL 4441731, at *5 (B.A.P. 9th Cir. Sept. 17, 2018). Here, Lichtenstein executed documents to transfer title of the manufactured home to Susan Browne on December 21, 2024, and submitted the documents to MHD immediately thereafter. The title was therefore no longer in the estate. MHD did not issue the new title until March 2025, but that is only because MHD sometimes takes several weeks to months to process the title. This does not change the fact that the title was transferred in December 2024. Based on this fact alone, there is no violation of the automatic stay. Indeed, it was the transfer of the title along with the eviction that triggered the increased rent under the Addendum.

1

2

**B.    An owner or landlord of a mobile home Park's acts to provide notice are acts to maintain or perfect a lien it already has for rents and related services and do not violate the automatic stay.**

3

4

The filing of a petition stays "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." *Id.* § 362(a)(2).  Section 362(a) of the Bankruptcy Code provides that a petition for bankruptcy under any of the applicable titles operates as a stay of "any act to create, perfect, or enforce a lien against property of the estate."  11 U.S.C.A. § 362(a)(3).

5

6

7

8

9

However, the petition for bankruptcy does not act as a stay as to any act under subsection (a) "to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title."  11 U.S.C.A. § 362(b)(3).

10

11

12

13

14

Section 546(b) of the Bankruptcy Code sets forth limits to the Trustees power and specifically states that those powers are "subject to any generally applicable law that-- (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation."  11 U.S.C.A. § 546(b)(1).  The only limitation on these powers is the generally applicable "requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and such property has not been seized, or such an action has not been commenced before the date of the filing of the petition."  11 U.S.C.A. § 546(b)(2).

15

16

17

18

19

20

21

22

23

24

25

26

27

Page 8 of 13

The Ninth Circuit Bankruptcy Appellate Panel has found that mechanics' lien law in Nevada, which is another lien statute under Chapter 108 of the Nevada Revised Statutes "is a 'generally applicable law' falling within § 546(b)."  *In re Badea*, No. 2:15-BK-10638-GS, 2018 WL 4441731, at *4 (B.A.P. 9th Cir. Sept. 17, 2018).

Nevada's lien statutes applicable to mobile home parks are akin to mechanic's liens in that the lien created by virtue of the relationship of the owner of the land with the owner of the manufactured home that sits upon its land and the notices required to perfect the lien fit within the exceptions set forth in § 546(b).  Nevada statutes provide that "A person engaged in the business of . . . [k]eeping a mobile home park . .  and who in connection therewith stores, maintains, keeps or repairs any . . . mobile home or manufactured home . . . at the request or with the consent of the owner or the owner's representatives . . . *has a lien upon* the . . . mobile home or manufactured home or any part or parts thereof for the sum due for the . . .  storing, maintaining, [or] keeping the . . . mobile home or manufactured home . . .  and for all costs incurred in enforcing such a lien."  NRS 108.270(1) (emphasis added).

The statute provides that it has a lien upon the manufactured home when it stores, maintains, or keeps the home on a lot.  Other provisions of the statutory scheme provide the procedures for perfection or maintaining the lien, including the timing and notice requirements. For example, with respect to liens for rent of a space upon which the mobile home or manufactured home sits, the procedure requires certain notices to be made within certain time periods that must be met to eventually enforce the lien.  *See, e.g.,* NRS 108.272 (providing information about who should be notified of the lien); NRS 108.315 (setting forth the timing of when notices for rent should be sent in order to preserve and/or maintain the lien).  The notices

sent in this case were sent pursuant to the requirements of NRS 108.315 that provide the required notices that must be sent in order to maintain and perfect the lien.

In other words, the lien belonging to an owner of a mobile home park against the manufactured homes in the park exists by virtue of the park's relationship with the person who owns the mobile home and has it placed or located on the land, and it was created when that relationship commenced. The perfection or maintenance of the lien requires the notices to be sent, but do not create the lien, which exists by virtue of the relationship between a mobile home park owners and an owner of a manufactured home that is located within the park.

Here, the notice that was sent pursuant to NRS 108.315 is a notice that is required to maintain or perfect a lien that was already created and therefore exempt from the automatic stay. Even if it was done prematurely here, it is still not a violation of the automatic stay.

**C.       The judgment itself is not a violation of the automatic stay.**

Debtor complains that the language in the judgment that states that it "shall constitute a lien upon the mobile home, and the contents contained therein, pursuant to, and to the extent allowed under NRS 108 et. Seq. and/or NRS 21" in and of itself is a violation of the automatic stay. However, the Justice Court entering this judgment is not an act to create, prefect, or enforce a lien. It is merely a statement of law that a lien may exist under NRS 108 or NRS 21. As discussed *supra*, a lien in favor of an owner of a mobile home park exists under NRS 108.272 by virtue of the relationship between the owner of the park and the owner of the manufactured home that is located on a space in the park and only covers rents and other services provided in the park. Because the judgment is for attorney fees a lien is not likely to be allowed. Even if it were, the language in the judgment does not create, perfect, or enforce the lien because it was already created. Similarly, Chapter 21 of the Nevada Revised Statutes simply outlines the

procedures and steps for executing on a judgment.  Therefore, the language in the judgment does not create something that did not already exist by virtue of the judgment that this Court allowed to be entered even without the language that the debtor complains of.  There is no "act to create, perfect, or enforce" a lien.  The act would be if Jaycees sought to attach, garnish, or execute the judgment, which it has not done here.  The parties stipulated to stay relief to allow the judgment to be entered.  That is all that has happened here.  The language in the judgment is simply not an act that would create, perfect, or enforce any lien and therefore cannot be a violation of the automatic stay.

**D.**     **The debtor has not provided evidence that Jaycees has harassed or taken any other acts to collect upon any judgment or amounts owed to the Park.**

Despite the Debtor's unsubstantiated and hotly disputed allegations, there is simply no evidence of the harassment she claims.  Further, some of the allegations are so outlandish as to be unbelievable.  For example, it is not believable that a criminal judge would tell a criminal defendant that they had to "turn over" their mobile home.  It did not happen.  Lichtenstein has been making unsubstantiated claims that Jaycees' manager has been trying to acquire manufactured homes in the park for cheap for his own profit during all of the prior proceedings between the parties and has never been able to substantiate any of those claims.  Unsubstantiated claims of sending pornographic texts, and making numerous calls are simply not believable or appropriate.  Indeed, it appears to be Lichtenstein, who understands that she is only still living in the Park because this Court has not signed the orders that she has already granted that would confirm that the eviction can go forward and was, for a period of time, repeatedly harassing the Park management in an effort to give her more time to stay despite the threat she is to other residents of the Park.

1

2

## 4.    Conclusion

3

Jaycees submits to the Court that the debtors' motion should be denied because she has

4

not demonstrated any violations of the automatic stay.  The manufactured home is not titled in

5

the Debtor's name since she transferred title to the home from her name pre-petition.  Even if the

6

manufactured home were in her name, the notices that were prepared and filed were to maintain

7

and perfect a lien that exists by virtue of the manufactured home being on the lot of the mobile

8

home park pursuant to state statute.  Finally, the language in the judgment is not an act to create,

9

perfect, or enforce a lien and Jaycee's has not taken any action to enforce the judgment.  The

10

court allowed the judgment to be entered, and the language complained of does not do anything

11

that the existence of the judgment does without the language.

12

The Court should deny the Debtor's request.

13

Dated this 25th day of March, 2025.

14

15

HUTCHISON & STEFFEN, LLC

16

17

*/s/ Jeffrey R. Hall*

By: _____

18

John T. Steffen (4390)

19

Jeffrey R. Hall (9572)

Todd W. Prall (9154)

20

Peccole Professional Plaza

10080 Alta Drive No. 200

21

Las Vegas, Nevada 89145

22

*Attorneys for Las Vegas Jaycees*

*Senior Citizen Mobile Home Park*

23

24

25

26

27

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 25th day of March, 2025, a copy of the

following document entitled:   ***JAYCEES SENIOR CITIZEN MOBILE HOME PARK'S***

***OPPOSITION TO MOTION TO HOLD CREDITOR LAS VEGAS JAYCEEES SENIOR***

***CITIZEN MOBILE HOME PARK IN CONTEMPT FOR VIOLATION OF THE***

***AUTOMATIC STAY UNDER §362(a) AND FOR ACTUAL DAMAGES, EMOTIONAL***

***DISTRESS DAMAGES, PUNITIVE DAMAGES AND ATTORNEY FEES***  was served by

Personally transmitting a copy of same via the Court's CM/ECF Internet system to their

respective registered email site.

Gregory L. Wilde
Wilde & Associates
7473 W. Lake Mead Blvd., Suite 100
Las Vegas, NV 89128
greg@wildelawyers.com


*/s/ Bobbie Benitez*
_____
An employee of Hutchison & Steffen, PLLC

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT A



John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>               Debtor. | Case No.: 25-10340-nmc<br>Chapter 13<br><br>**DECLARATION OF ROBERT DEKEN IN SUPPORT OF JAYCEES SENIOR CITIZEN MOBILE HOME PARK'S OPPOSITION TO MOTION TO HOLD CREDITOR LAS VEGAS JAYCEES SENIOR CITIZEN MOBILE HOME PARK IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY UNDER §362(a) AND FOR ACTUAL DAMAGES, EMOTIONAL DISTRESS DAMAGES, PUNITIVE DAMAGES AND ATTORNEY FEES** |

Robert Deken declares under the penalty of perjury for the laws of the United States that the following is true and correct:

1.    I am the manager of Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees") and I have personal knowledge of the facts set forth herein.

2.      I make this declaration in support of the Jaycees Opposition to Motion to Hold Las Vegas Jaycees Senior Citizen Mobile Home Park in Contempt for Violation of the Automatic Stay under §362(a) and for Actual Damages, Emotional Distress Damages, Punitive Damages and Attorney Fees (the "Opposition").

3.      Jaycees is a non-profit subsidized manufactured home community for senior citizens that operates under Chapter 118B of the Nevada Revised Statutes ("NRS 118B").

4.      The Debtor Ursula Lichtenstein ("Lichtenstein") was a resident of Jaycees and owned a manufactured home that was located as Space No. 305 (the "Manufactured Home") in the mobile home park (the "Park").  Lichtenstein signed Mobile Home Lot Lease to live in the Park.  A true and correct copy of the Mobile Home Lot lease is attached to the Opposition as Exhibit B.

5.      The rent amount for the Space No. 305 where Lichtenstein was residing prior and is still residing despite the eviction is not $255 per month.

6.      The Mobile Home Lot Lease specifically requires that residents be either the owner or co-owner of the manufactured home they are living in in order to continue to lease the lot in the Park.

7.      As part of the space lease agreement, Lichtenstein signed Mobile Home Lot Rent/Storage Agreement Lease Addendum (the "Addendum").  A true and correct copy of the Addendum is attached to the Opposition as Exhibit B.

8.      Per the Addendum, the Mobile Home Lot Lease transitions to a storage lease if the resident is evicted or if the home is transferred to a non-resident in the Park.  That transfer causes the lot rent to increase by two times the current rent plus another one hundred dollars if the resident is evicted or transfer

9.      In December 2024, after a trial, the Las Vegas Justice Court found that she had committed acts of elder abuse and/or exploitation that constituted grounds for termination of her space lease and eviction from Jaycees.

10.     A writ of permanent restitution was issued for Lichtenstein's eviction was issued in early January 8, 2025.  Jaycees, in good faith, agreed to allow Lichtenstein a few days, or until about January 19, 2025, to remove herself voluntarily from the manufactured home community. Instead of leaving the community as she agreed to do, Lichtenstein filed bankruptcy.  Because of the bankruptcy, Jaycees, in good faith took steps to obtain the bankruptcy court's cooperation with completing the eviction and finalizing a judgment.

11.     On or about December 21, 2024, however, Lichtenstein transferred title to the manufactured home to her daughter, Susan Browne.  Jaycees did not become aware of the transfer about the beginning of 2025.  Jaycees was able to confirm with Nevada's Manufactured Housing Division ("MHD") that they had received the documents signed by Lichtenstein to process a new title in December, 2024  A true and correct copy of the Certificate of Title signed by Licthenstein in December 21, 2024 that Jaycees received from MHD is attached to the Opposition as Exhibit C.

12.     Once Jaycees confirmed that Lichtenstein has signed the documents to transfer title to Susan Browne and those title documents had been submitted to Nevada's Manufactured Housing Division ("MHD") for processing, Jaycees determined that additional rent was owed under the Addendum because the home dd not belong to Lichtenstein.

13.     Based on this change, Jaycees began charging an additional Because of this change in December 2024, Jaycees adjusted the space lot of rent owed from January 2025 going

Page 3 of 7

forward to include an additional $355 in lot rent plus additional late fees.  A true and correct

copy of the current ledger for Space 305 is attached to the Opposition as Exhibit D.

14.    Sometimes it takes several months for MHD to process the paperwork and issues

a new title.  In March 2024, we were able to obtain the new title that shows that the

manufactured home is now titled in the name of Susan Browne and Charles Michael McKinnon

Jr.  Although we have been told repeatedly that Lichtenstein intends to get title of the

manufactured home back in her name, it still remains in the name of her daughter and Mr.

McKinnon who was believed to be Susan Browne's boyfriend.

15.    Although Lichtenstein had pre-paid the base $255 in rent, she had not paid the

additional rent that was now owed.  Jaycees commenced the lien process via a notice of lien that

was served in February 2025.  Upon revieing the lien process now, it appears that because of the

pre-paid portion of the rent, the lien was recorded prematurely and is not valid under Nevada

law.  It should not have been filed until March 2025.  Jaycees will rescind the premature notice.

16.    However, because the manufactured home does not belong to Lichtenstein and

Jaycees is entitled to the higher rent, Jaycees intends to complete a lien in April pursuant to NRS

108.  My understanding is Jaycees is entitled to protect and maintain NRS 108 liens even if a

resident is in bankruptcy, and Jaycees would re-submit its notice of lien as allowed by statute in

April 2025 even if the manufactured home were part of the Debtor's estate.  Jaycees understands

that it cannot auction the home unless it seeks leave from this Court, but it can preserve and

maintain its statutory lien rights.

17.    I have received phone calls and phone messages from Susan Browne informing

me that she owns the manufactured home at Space No. 305 and that she intends to sell the home.

Indeed, on March 15, 2025, I received a "Notice of Intent to Sell," stating that Susan Browne and

Charles McKinnon were listing the mobile home for sale at Space No. 305. A true and correct copy of the Notice of Intent to sale is attached to the Opposition as Exhibit E.

18.    I have reviewed the Motion to Hold Las Vegas Jaycees Senior Citizen Mobile Home Park in Contempt for Violation of the Automatic Stay under §362(a) and for Actual Damages, Emotional Distress Damages, Punitive Damages and Attorney Fees (the "Motion") and the declarations submitted in support of the Motion. I also have reviewed the most recent declaration from Lichtenstein submitted to the Court on March 14, 2025

19.    Lichtenstein is the subject of a criminal prosecution for the same activities that resulted in her eviction from Jaycees. I have attended the arraignment hearing, which is the only criminal proceeding that I was aware of. I have never spoken to the judge presiding over her criminal case and did not even attempt to address the judge during the criminal proceedings. At no time during that arraignment hearing did I hear the judge tell her that she had to "turn over her mobile home." After the arraignment, I spoke to the prosecutor as he was leaving. I did tell the prosecutor about the eviction proceeding but I do not know what he ultimately did with that knowledge.

20.    I understand that the prosecutor sought to have her removed form the Park based on the criminal allegations against her, but I was not involved in those efforts. I do know that the criminal court issued a no contact order which requires Lichtenstein to not contact me and to not contact other residents of the Park. The order was valid until at least March 13, 2025, and she has repeatedly violated the order. A true and correct copy of the no contact order is attached to the Opposition as Exhibit F.

21.    Lichtenstein's claims that I am harassing her are simply not true. If anything, the opposite is true. For example, Lichtenstein has repeatedly made false accusations against me

Page 5 of 7

claiming that I am seeking to personally acquire manufactured homes in the park for my own profit. Even though there is no substance to these claims, she had continued to assert them against me.

22.    Lichtenstein has accused me of calling her and harassing her. However, it is Lichtenstein who had been calling and harassing me. Nearly all the calls the office has from Lichtenstein have originated with her and not the other way around. I received calls in the office that I did not answer that came from Lichtenstein on February 5, 6, 17, 18, and 20, 2025. I only returned of one of these calls on February 16, 2025, to request that she stop calling. During this call, Lichtenstein asked to meet with me privately. I declined to do so. She also offered to pay me to stay longer. I refused. I explained that because of the nature of her activity in the Park, I could not agree to allow her to stay because the Park considered her a threat to other residents.

23.    I have not called her other than the one phone call. I never told her I could "pick this place up cheap" or that she would "have to do a fire sale."

24.    Lichtenstein did come to my office accusing me of sending her an explicit video. I denied sending any explicit video to her and when I asked her to show me where it shows it was sent from me, she could not show me. Another resident in the park, who resides Space 68, informed me that the explicit video is of her and she has accused Lichtenstein is sending it from a burner phone.

25.    On February 20 and 25, 2025, Lichtenstein visited the office demanding to stay longer. When I refused, she threatened to have me fired and to follow me at every job ia had until the day she dies. She also stated, "I'm not done with you yet" and "I'm going to get you."

26.    On February 28, 2025, another resident, Jodi Kalicki in Space No. 68, informed me that Lichtenstein asked her if she knew anyone in California who could "harm" me implying

that she was interested in hiring someone.  On that same day, I received a call from Susan

Browne confirming that Lichtenstein and repeatedly stated in front of others that she intended to

kill me and then take her own life.

27.     More recently, Tita Marquez, a licensed mobile home dealer who Lichtenstein

had initially retained to help sale the manufactured home, told me Lichtenstein had told her she

intends to kill me.  She informed me that she no longer felt comfortable representing her because

of the fraudulent transfer of the manufactured home to Susan Browne and the death threats.

28.     Lichtenstein also drives past my home in the Park almost every day, even though

it is clearly out of her way.

29.     Because of her actions and the threats to my life I have heard from multiple

sources, Jaycees has been required to retain the services of an armed security officer to remain at

the office during work hours.

30.     Meanwhile, she continues to reside in the Park because we are awaiting the order

form the bankruptcy court that confirms we can go forward with the eviction.

31.     I declare the foregoing under the penalty of perjury for the laws of the United

States.

Dated: <u>March 25, 2025</u>                      _____

                                                     Robert Deken

Page 7 of 7

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT B



# Las Vegas Jaycees Senior Citizens Mobile Home Community
5805 W. Harmon Rd.
Las Vegas, NV 89103
(702) 364-4931

MOBILE HOME LOT LEASE

Lot Size: _Double WIDE_

Lease No: _305_

Address: _5805 W. Harmon Ave., Spc._

_Las Vegas NV 89103_

The Las Vegas Jaycees Senior Citizens Mobile Home Community, hereinafter "Jaycees", or its managing agent, hereinafter referred to as "Management", does hereby agree to lease to:

Hereinafter referred to as the "Resident", that certain Mobile Home Lot # _305_ located at 5805 W. Harmon Ave., Las Vegas, Nevada 89103, bearing unit # _305_, under terms and conditions set forth below.

## 1. OTHER REQUIREMENTS
Attached hereto as "Exhibit A" and hereby incorporated herein is a copy of the "Rules, Regulations, and Policies" which provides a comprehensive and detailed description of the rules, regulations, and policies which Residents must follow. For those Residents who wish to keep a pet, attached hereto as "Exhibit B", and hereby incorporated herein is a copy of the "Pet Ownership Regulations and Application" which provides the rules specific to the keeping of a pet by Residents. Residents are required to comply with the "Rules, Regulations, and Policies" and if appropriate, to the "Pet Ownership Regulations and Application." Management reserves the right to change these documents, but will post notice of a time and place for Resident input and distribute copies of the new version to all residents after adoption of any change.

## 2. TERM OF LEASE
This lease shall be for a period of one calendar month.

## 3. RENEWAL OF LEASE
This lease shall be automatically renewed for successive terms of one (1) calendar month each, unless terminated by either party as herein provided.

## 4. LEASE AND OCCUPANCY REQUIREMENTS
Occupancy under this lease is limited to at least one member of the family unit being 55 years of age except as provided under the "Rules, Regulations, and Policies" document. Only the following persons may reside in the park in this family unit.

Ursula Lichtenstein    head of house

Master Lease 2018                1 of 6

PLTF00001

## 5. RENTAL PAYMENTS

A. The monthly rent of $ __240.00__ shall be due and payable on the first day of each month beginning _July 1_ , __2018__ . The monthly rent will remain in effect unless adjusted by Management, in which case Management shall give not less than ninety (90) days written notice. Any such adjustment in rent shall become effective on the first day of the calendar month following the expiration of the ninety (90) day notice period.

B. The initial payment for the period beginning _July 1_ , __2018__ , and ending _July 31_ , __2018__ , shall be $ _240.00_ , due and payable at the time this lease is executed. Thereafter the Resident shall pay the monthly rent as provided in paragraph "A" of this section.

## 6. CHARGES OTHER THAN RENT

The Resident agrees to pay late charges on unpaid rent which will be assessed as follows:

A. Delinquent rent payment:

1. If rent is not paid by the fifth (5th) day of the month, a charge of one dollar ($1.00) per day will be assessed for each day the rent remains unpaid from the first (1st) day of the month, not to exceed thirty dollars ($30.00) per month.

2. Any payments received through the night slot will be assessed late charges as of the last working day or last open office day.

3. Residents who have not paid rent by the fifth (5th) day of the month will receive an appropriate "Notice to Pay rent or Quit." If no response is received by the end of the notice period, it will be necessary to file an action for possession of the premises in Justice of the Peace Court. Additional charges will be assessed to cover court and constable fees involved in the process. If it is necessary to issue "Final Notice" or to obtain formal eviction under state law, then the cost of such notice and/or eviction will also be assessed to the Resident.

B. Delinquency charges will not be assessed against account balances due for previous delinquencies other than rent.

C. Bad Check Charges: A charge of five dollars ($5.00) will be made for a check in payment of rent and/or other charge which is returned due to insufficient funds or related reasons. If such occurs, Management will no longer accept checks from that Resident, but will take cash or money orders only.

D. Charges for Cable Service: A charge of $ N/A will be assessed for Cable TV service.

## 7. SECURITY DEPOSIT

No security deposit shall be required for occupancy in this park.

## 8. UTILITIES

The Management agrees to furnish utilities to the Resident on the following terms and conditions:

PLTF000002

A. Sewer, water, and refuse service shall be furnished without additional charge, unless the Sanitation District shall change the billing system so that sewer bills are combined bills issued by the Las Vegas Valley Water District, in which case, the resident shall pay the combined bill.

B. Natural gas and electricity services used by the Resident shall be billed directly by the supplier and the Resident shall make payment directly to the supplier.

## 9. SERVICES TO BE RENDERED BY AND AGREEMENTS OF THE MANAGEMENT
Management agrees:

A. To keep the common areas in a neat, clean, and sanitary condition.

B. To maintain plantings and yards in common areas.

C. To maintain, repair, and supply all utilities to the community and laundry buildings.

D. To maintain and repair streets and parking areas.

E. To provide and pay for refuse removal.

## 10. AGREEMENT OF RESIDENT
As a condition of occupancy of the leased mobile home space, the Resident agrees:

A. To keep the lot area and the mobile home in a clean and sanitary condition, and to cooperate with Management in maintaining common areas.

B. To use the mobile home solely as a private dwelling for him/herself and eligible members of his/her family, and not to lease, rent, or permit occupancy of any portions of the mobile home by any person not listed on the application.

C. To dispose of all refuse, garbage, and trash by placing it in containers to be furnished by Management, such materials to be collected by the refuse company.

D. That he/she and other members of his/her family will not engage in unlawful or disorderly conduct or the commission of a nuisance, or in conduct that is a hazard to the health or safety, or disturb other Residents in quiet enjoyment of their dwellings and project facilities.

E. To abide by all adopted rules, regulations, notices, and speed limits which are hereby incorporated herein reference.

## 11. TERMINATION OF LEASE BY RESIDENT
The Resident may terminate this lease at any time by giving a forty-five (45) day written notice. This written notice shall be delivered to the office of the Management.

## 12. TERMINATION OF LEASE BY MANAGEMENT
Management may terminate this lease for one or more of the following reasons:

A. Failure to pay the agreed upon rental when due.

PLTF000003

B. Failure of the Resident to comply with any law, ordinance, or governmental regulation applicable to siting or occupancy of a mobile home.

C. Failure of the Resident to comply with the terms of this lease or the rules and regulations governing the park.

D. Conduct of the Resident in the mobile home park which constitutes a serious annoyance to other Residents or seriously interferes with the management of the park.

E. Condemnation or a change in land use of the mobile home park.

F. Conduct of the Resident which constitutes a nuisance under applicable laws of the State of Nevada or the County of Clark.

Management may terminate this lease upon giving written notice to the Resident in the manner provided in NRS 40.280:

A. Five (5) days in advance if the termination is based on the conduct of the Resident constituting a nuisance as described in subsection 6 of NRS 118B.200

B. Ten (10) days in advance if the termination is due to failure of the tenant to pay rent, utility charges or reasonable service fees.

C. One hundred eighty (180) days in advance if the termination is due to a change in the use of the land by the landlord pursuant to NRS 118B.180.

D. Forty-five (45) days in advance if the termination is for any other reason.

## 13. ASSIGNMENT
The Resident may not assign this lease.

## 14. SUBLETTING OR RENTING
The resident shall not sublet or rent his/her mobile home or any part thereof except as may be approved by Management as specified in the "Rules, Regulations, and Policies."

## 15. HEARING PROCEDURES
In connection with all termination of lease notices and proceedings, a duly authorized representative of Management will inform the Resident in a private conference, or other appropriate manner, of the reasons for the termination and will give the Resident an opportunity to review and participate, if he/she so wishes, in the hearing procedure that has been established by Management which is as follows: If an informal hearing has been requested by a Resident, the informal hearing must be conducted by a Management employee or a person mutually agreed to by both parties. If the informal hearing does not resolve the issue to mutual satisfaction, then:

A. The Resident may retain counsel or other representative, if desired, at it own expense.

B. Either the Resident or his/her counsel/representative must be given an opportunity to examine evidence and question any adverse witness(es). The Resident or his/her counsel/representative must also be given an opportunity to present testimony and evidence in its favor. The decision of the hearing official must be in writing, must be based solely on evidence provided at the hearing, and must state the legal and evidentiary grounds for the decision.

PLTF000004

Decision by the hearing officer in favor of Management, or which denies the relief requested by the resident in whole or in part shall not constitute a waiver of, or affect in any manner whatever, any rights the resident may have to a trial de novo or judicial review in any judicial proceedings which may thereafter be brought in the matter.

## 16. OWNERSHIP OF MOBILE HOMES

A. The Resident must be a sole owner or co-owner of the mobile home except that a Resident may be a renter in a mobile home owned by the Las Vegas Jaycees Senior Citizens Mobile Home Community.

B. In the case where the Resident desires to sell his/her mobile home to a buyer who will keep the mobile home in the mobile home park, the sale and the prospective buyer must be approved in writing by Management. Management reserves the right to accept or reject any proposed buyer that seeks to become a Resident to ensure that the proposed buyer meets age and income eligibility requirements. The prospective buyer must be approved for tenancy in the mobile home park before the sale is closed.

C. If the Resident sells or otherwise disposes of his/her mobile home to a buyer or occupant who is not eligible for tenancy in the mobile home park or is not accepted as a Resident by Management, the selling or disposing Resident or his/her legal representatives must notify management of the date of the sale or disposition and the name of the buyer or recipient, and the mobile home must be removed from the park within forty-five (45) days after the close of the sale or disposal. Space rental must be paid to Management for the full time the mobile home occupies space in the mobile home park.

D. If the Resident is not the sole owner of the mobile home in which he/she resides, and the Resident leaves the park, Management may require the mobile home to be removed from the park within forty-five (45) days after the Resident leaves. Space rental must be paid to the Management for the full time that the mobile home occupies space in the park. Removal of the mobile home may be waived at the sole option of Management if the mobile home is sold for occupancy by a qualified prospective Resident who is acceptable to Management. Management reserves the right to accept or reject any proposed buyer who seeks to become a Resident.

PLTF000005

I/WE, THE RESIDENT(S) WHOSE SIGNATURE(S) APPEAR IMMEDIATELY BELOW, HAVE READ AND DO UNDERSTAND AND HEREBY AGREE TO THE PROVISIONS OF THIS LEASE AND THE CONDITIONS SET FORTH IN THIS LEASE, AND, I/WE HEREBY FURTHER AGREE THAT THE FAILURE TO OBSERVE AND FOLLOW SAID LEASE PROVISIONS AND CONDITIONS OF OCCUPANCY WILL BE JUST AND PROPER CAUSE FOR THE TERMINATION AND CANELLATTION OF THIS LEASE BY MANAGEMENT. I/WE ALSO UNDERSTAND THAT THIS LEASE CONTAINS A PROVISION FOR THE AUTOMATIC RENEWAL FOR SUCCESSIVE TERMS OF ONE (1) CALENDAR MONTH EACH, UNLESS TERMINATED BY EITHER PARTY AS HEREIN PROVIDED.

IN WITNESS WHEREOF, THE PARTY(IES) HEREIN HAVE EXECUTED THIS LEASE AGREEMENT THIS 27th DAY OF June , 2018 .

MANAGEMENT

By: _____
     (Representative)

_____
     (Title)

RESIDENT

By: _____
     (Head of Household)

_____
     (Other Occupant)

PLTF00006

**Las Vegas Jaycees Senior Citizens Mobile Home Community**
**5805 Harmon Avenue**
**Las Vegas, Nevada 89103**
**(702) 364-4931**

### MOBILE HOME LOT RENT/STORAGE AGREEMENT LEASE ADDENDUM

A.  If the current resident passes away and there are no living Person(s) residing in the mobile home subject to the lease agreement, then the heir/responsible party shall be allowed three (3) months space rent at the then current space rent amount, chargeable to the deceased tenant, beginning the following month after the death. This continuing discounted three (3) month rent concession is to enable the heir/responsible party time to get decedent affairs in order and try to sell the home. Should the home not sell during the allotted three (3) month period, the home will be placed on an elevated rent **Storage Agreement** for two (2) times the current space rent plus **One Hundred Dollars ($100.00)** and is due and payable on the first day of the month.  If the payment is received the closing of business on the fifth day of the month, a **Twenty-Five ($25.00)** late charge will be imposed.

B.  Should a resident chose to move out of the community and/or be evicted from the community, the person on the lease or the responsible party is then advised the elevated storage rent rate goes into effect immediately.  This being at the rate of two (2) times the current space rent plus **One Hundred Dollars ($100.00)** which is due on the first of the month, with late charges of **Twenty-Five ($25.00)** incurring following the close of business the fifth day of the month.  Failure to comply with the elevated rent Storage Agreement will result in the mobile home being subject to a Landlord Lien with all rent, late, and legal fees to be paid in full in order to reinstate the Storage Rent Agreement and have the Landlord Lien removed.

Date  6/27/18

Manager

Date  4-27-18

(Resident Signature)

Ursula Lichtenstein
(Print Name)

_____
(Resident Signature)

_____
(Print Name)

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT C



*ASloan*
*12|23|24*
*#04060*

Keep this document in a safe place. A certificate of ownership document maybe required to sale, transfer, convert a structure to real property, or obtain financing.

Note: This document is sent without the County Assessor's Endorsement. You will need to get their endorsement below when you are ready to transfer title

STATE OF NEVADA
HOUSING DIVISION

## B0365010

ISSUED

# Certificate of Ownership

**WARNING:**
There may be outstanding liens against this structure which do not appear on the face of this certificate. Interested person(s) should contact Manufactured Housing.

**OWNERS:**
URSULA LICHTENSTEIN OR SUSAN BROWNE
5805 W HARMON AVE #305
LAS VEGAS, NV 89103

**ISSUE DATE:** 12/20/2021

THIS CERTIFICATE IS EVIDENCE OF LEGAL OWNERSHIP OF THE STRUCTURE IT DESCRIBES. THIS CERTIFICATE OF TITLE REMAINS IN FORCE AND EFFECT UNTIL ITS CANCELLATION.

TOD:

**WARNING:**
ENDORSEMENT REQUIRED BY COUNTY ASSESSOR WHERE MOBILE HOME IS SITUATED THAT ALL TAXES HAVE BEEN PAID BEFORE TITLE CAN BE TRANSFERRED. FY 2024-2025

LIENHOLDER:

Serial No: 09946364387AB
Year: 1994
Make/Model: CHAMPION INFINITY II
Size: 624" x 142"        612" x 142"

*12|23|24*

*ASloan #04060*

SIGNATURE ASSESSOR OR DEPUTY ASSESSOR

---

**TO TRANSFER OR CHANGE TITLE RECORD, YOU WILL COMPLETE THIS FORM.** Additional forms and/or supporting documents may be required along with this document. There is a $60 fee, per titling transfer or record change. You will mail this form to our Carson City office for processing or drop it at one of the locations listed on the back of the form. *Complete documents must be submitted to the division with proper payment within 45 days of the transfer.*

**1. Contact Information** - Please provide the phone number and e-mail address of the party we should contact, if there are any issues with this titling.

Name: Susan Browne
Phone: 702-569-9364        E-Mail Address: bobbi9458@comcast.com
Physical Address of Structure: 5805 W Harmon Av. #305

What type(s) of transactions are you wishing to accomplish with this submission?

- [ ] Home Sold/New Buyer
- [ ] Remove Lienhold (May add TL-102 or Letter of No Interest)
- [ ] Remove Deceased Owner (May require court order, death certificate or TL-106, if applicable)
- [ ] Reposession of home (Lienholder will add TL-101)
- [ ] Change Owner Names
- [ ] Add Lienholder
- [ ] Gift Home (Parks will add TL-101)
- [ ] Other

*If you have titling questions, you may email us at titles@housing.nv.gov or call us at (888) 486-8775. You can visit HOUSING.NV.GOV to view and download titling forms.*

**2. Release of Lien Holder** - If a lienholder is listed above, *they must release their interest* by attaching a TL-102 Lien Satisfied Form. This form can be found on our website at HOUSING.NV.GOV on the Titling page under Title Forms. We will also accept a Letter of No Interest (on Letterhead & Notarized.)

**3. Trust Appointment and Powers** - If the home is in a trust or will be placed into a trust, the Trustees or Successor Trustees must complete this section.

| For Trustee(s) to Complete | For Successor Trustee(s) to Complete |
|---|---|
| I/We_____ | I/We_____ |
| Declare that I/We have been appointed as Trustee(s) of: | Declare that I/We have been appointed as Successor Trustee(s) of: |

And have the powers granted as trustee(s) to sign for the transfer of the above described structure. I/We the trustee(s) jointly and severally indemnify the Nevada Housing Division, and hold the Nevada Housing Division and the State of Nevada harmless from any liability on the account of the issuance of a title on said structure as aforesaid.

And have the powers granted as successor trustee(s) to sign for the transfer of the above described structure. I/We the trustee(s) jointly and severally indemnify The Nevada Housing Division, and hold the Nevada Housing Division and the State of Nevada harmless from any liability on the account of the issuance of a title on said structure as aforesaid.

# 0469120

**4.** Bill of Sale - *Place the date the sale occurred and the dollar amount paid for the home. If gifting a home, you may place zero dollars.*

(I/We) as sellers further state that to (my, our) knowledge, the structure is free and clear of any liens encumbrances, lawful claims and demands to any person whatsoever, the structure is not involved in any existing or pending litigation. That in consideration of $ ~~0~~ transfer and other valuable consideration, the receipt of whereof is hereby acknowledged, the undersigned (SELLER) does hereby, sell, transfer and deliver on the _21_ day of _Dec._, 20 _24_ his/her right, title and interest in the above structure to the following purchaser.

**5.** New Title Owners - *Place the names of owner(s) as you wish them to appear on the title below. Please print legibly, all names to be shown on the title. Vesting is for situations where there are multiple owners only. If vesting is not selected, we will place an "OR."*

Print New Owners Name(s): ___Susan Browne___

Vesting between Names: ☐ OR ☐ AND ☐ JTWROS    (if appliable)

E-Mail Address: _____    (Your title will be e-mailed to you)

Mailing Address: _____
(Street)                                (City)                         (Zip)

**6.** Beneficiary/Transfer On Death. - *If you wish to appoint or change a beneficiary to this structure, please complete below. For more details, see NRS 489.564*

Select Action Required: ☐ ADD    ☐ Remove

Print New Owners Name(s): _____

**7.** New Lienholder - *Place the name(s) of lienholders here.*

Print Lienholder Name(s): _____

E-mail Address: _____

Mailing Address: _____
(Street)                                (City)                         (Zip)

**8.** The statements and declarations herein contained are for the specific purpose of inducing said Division to issue a Certificate of Ownership; that (I, we) shall and will assume, fully pay, satisfy and discharge any and all liens, claims or encumbrances disclosed herein or any others that may be shown or proved to be upon or against said structure and indemnify and hold harmless said Division and the State of Nevada on account of the issuance of said Certificate of Ownership on said structure as aforesaid.

**9.** Signatures and Notary of Seller(s) -

*Sign in front of Notary*

_Ursula Liehlensler_ 12/21/24
SIGNATURE                                DATE

_N/A_
SIGNATURE                                DATE

_N/A_
SIGNATURE                                DATE

_N/A_
SIGNATURE                                DATE

This instrument was acknowledged before me on this _21st_ day of _December_, 20_24_

By _Ursula Liehtenstein_    _N/A_

STATE OF _Nevada_
COUNTY OF _Clark_

_[signature]_
Notary Public

Linda M Abrams
Notary Public - State of Nevada
County of Clark
APPT. NO. 19-6625-01
My Appt. Expires: Sept. 3, 2027

Above signatures of the OWNERS as described on the face of this Certificate releases the OWNER's interest in the described structure.

**10.** Signatures and Notary of New Titled Owner(s)

*Sign in front of Notary.*

_Susan Browne_ 12-21-24
SIGNATURE                                DATE

_N/A_
SIGNATURE                                DATE

_N/A_
SIGNATURE                                DATE

_N/A_
SIGNATURE                                DATE

This instrument was acknowledged before me on this _21st_ day of _December_, 20_24_

By _Susan Browne_ and    _N/A_

STATE OF _Nevada_
COUNTY OF _Clark_

_[signature]_
Notary Public

Linda M Abrams
Notary Public - State of Nevada
County of Clark
APPT. NO. 19-6625-01
My Appt. Expires: Sept. 3, 2027

Above signatures of the OWNERS as described on the face of this Certificate releases the OWNER's interest in the described structure.

**Carson City Office**

1830 E College Parkway Ste 120
Carson City, Nevada 89706
Phone: (775)684-2940



NEVADA
HOUSING DIVISION

**Las Vegas Office**

3300 W Sahara Ave Ste 320
Las Vegas, Nevada 89103
Phone: (702) 486-4135

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT D



**Homeowner Ledger**

**Homeowner:** Ursula (Bobbi) Lichtenstein

**Phone:** (702) 764-9458

**Unit Name:** 305

**Unit Address:** 5805 W Harmon Ave Las Vegas, NV 89103

**Association:** JAYCEES

**Status:** Current

**Dues:** 0.00

| Date | Payer | Description | Charges | Payments | Balance |
|------|-------|-------------|--------:|---------:|--------:|
| | | | | | 0.00 |
| | | | | | Starting Balance |
| 10/01/2021 | | Regular Assessments - October 2021 | 240.00 | | 240.00 |
| 10/06/2021 | Ursula (Bobbi) Lichtenstein | Payment (Reference #2317) oct rent | | 240.00 | 0.00 |
| 10/07/2021 | Ursula (Bobbi) Lichtenstein | Payment (Reference #8982) Nov rent | | 240.00 | -240.00 |
| 11/01/2021 | | Regular Assessments - November 2021 | 240.00 | | 0.00 |
| 11/12/2021 | Ursula (Bobbi) Lichtenstein | Payment (Reference #3978) Dec Rent | | 240.00 | -240.00 |
| 12/01/2021 | | Regular Assessments - December 2021 | 240.00 | | 0.00 |
| 12/10/2021 | Ursula (Bobbi) Lichtenstein | Payment (Reference #8780) Jan Rent | | 240.00 | -240.00 |
| 01/01/2022 | | Regular Assessments - January 2022 | 240.00 | | 0.00 |
| 01/18/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #7331) Feb Rent | | 240.00 | -240.00 |
| 02/01/2022 | | Regular Assessments - February 2022 | 240.00 | | 0.00 |
| 02/01/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #1208) Mar Rent | | 240.00 | -240.00 |
| 03/01/2022 | | Regular Assessments - March 2022 | 240.00 | | 0.00 |
| 03/07/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #3184) Apr Rent | | 240.00 | -240.00 |
| 04/01/2022 | | Regular Assessments - April 2022 | 240.00 | | 0.00 |
| 04/07/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #7142) May Rent | | 240.00 | -240.00 |
| 05/01/2022 | | Regular Assessments - May 2022 | 240.00 | | 0.00 |
| 05/06/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #6054) June Rent | | 240.00 | -240.00 |
| 06/01/2022 | | Regular Assessments - June 2022 | 240.00 | | 0.00 |
| 06/08/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #8426) July Rent | | 240.00 | -240.00 |
| 07/01/2022 | | Regular Assessments - July 2022 | 240.00 | | 0.00 |
| 07/05/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #9406) August Rent | | 240.00 | -240.00 |
| 08/01/2022 | | Regular Assessments - August 2022 | 240.00 | | 0.00 |
| 08/03/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #2650) Sept. Rent | | 240.00 | -240.00 |
| 09/01/2022 | | Regular Assessments - September 2022 | 240.00 | | 0.00 |
| 09/06/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #3102) Oct Rent | | 240.00 | -240.00 |
| 10/01/2022 | | Regular Assessments - October 2022 | 240.00 | | 0.00 |
| 10/05/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #0659) Oct Rent | | 240.00 | -240.00 |
| 11/01/2022 | | Regular Assessments - November 2022 | 240.00 | | 0.00 |
| 11/04/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #0488) Dec Rent | | 240.00 | -240.00 |
| 12/01/2022 | | Regular Assessments - December 2022 | 240.00 | | 0.00 |
| 12/05/2022 | Ursula (Bobbi) Lichtenstein | Payment (Reference #6252) Jan Rent | | 240.00 | -240.00 |
| 01/01/2023 | | Regular Assessments - January 2023 | 240.00 | | 0.00 |
| 01/04/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #8598) Feb Rent | | 240.00 | -240.00 |
| 01/27/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #19-321171025) march rent | | 240.00 | -480.00 |
| 02/01/2023 | | Regular Assessments - February 2023 | 240.00 | | -240.00 |
| 03/01/2023 | | Regular Assessments - March 2023 | 240.00 | | 0.00 |
| 03/06/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #06170) april rent | | 240.00 | -240.00 |
| 03/22/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #19-504607539) may rent | | 240.00 | -480.00 |

**Homeowner Ledger**

| Date | Payer | Description | Charges | Payments | Balance |
|------|-------|-------------|---------|----------|---------|
| 04/01/2023 | | Regular Assessments - April 2023 | 240.00 | | -240.00 |
| 04/21/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #19-504646907) june and july rent | | 495.00 | -735.00 |
| 05/01/2023 | | Regular Assessments - May 2023 | 240.00 | | -495.00 |
| 06/01/2023 | | Regular Assessments - June 2023 | 240.00 | | -255.00 |
| 07/01/2023 | | Regular Assessments - July 2023 | 255.00 | | 0.00 |
| 07/03/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #504700839) aug and sept rent | | 510.00 | -510.00 |
| 08/01/2023 | | Regular Assessments - August 2023 | 255.00 | | -255.00 |
| 08/28/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #2566000487) oct rent | | 255.00 | -510.00 |
| 09/01/2023 | | Regular Assessments - September 2023 | 255.00 | | -255.00 |
| 09/08/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #504762402) oct and nov rent | | 510.00 | -765.00 |
| 10/01/2023 | | Regular Assessments - October 2023 | 255.00 | | -510.00 |
| 11/01/2023 | | Regular Assessments - November 2023 | 255.00 | | -255.00 |
| 12/01/2023 | | Regular Assessments - December 2023 | 255.00 | | 0.00 |
| 12/07/2023 | Ursula (Bobbi) Lichtenstein | Payment (Reference #19-605468197) jan-mar | | 765.00 | -765.00 |
| 01/01/2024 | | Regular Assessments - January 2024 | 255.00 | | -510.00 |
| 02/01/2024 | | Regular Assessments - February 2024 | 255.00 | | -255.00 |
| 03/01/2024 | | Regular Assessments - March 2024 | 255.00 | | 0.00 |
| 03/04/2024 | Ursula (Bobbi) Lichtenstein | Payment (Reference #19-504926999) April-June | | 765.00 | -765.00 |
| 04/01/2024 | | Regular Assessments - April 2024 | 255.00 | | -510.00 |
| 05/01/2024 | | Regular Assessments - May 2024 | 255.00 | | -255.00 |
| 06/01/2024 | | Regular Assessments - June 2024 | 255.00 | | 0.00 |
| 06/25/2024 | Ursula (Bobbi) Lichtenstein | Payment (Reference #1069) July-September | | 765.00 | -765.00 |
| 07/01/2024 | | Regular Assessments - July 2024 | 255.00 | | -510.00 |
| 08/01/2024 | | Regular Assessments - August 2024 | 255.00 | | -255.00 |
| 09/01/2024 | | Regular Assessments - September 2024 | 255.00 | | 0.00 |
| 09/11/2024 | Ursula (Bobbi) Lichtenstein | Payment (Reference #19-665783024) Oct-Dec | | 765.00 | -765.00 |
| 10/01/2024 | | Regular Assessments - October 2024 | 255.00 | | -510.00 |
| 11/01/2024 | | Regular Assessments - November 2024 | 255.00 | | -255.00 |
| 12/01/2024 | | Regular Assessments - December 2024 | 255.00 | | 0.00 |
| 12/23/2024 | Ursula (Bobbi) Lichtenstein | Payment (Reference #691131027) Jan-Mar | | 765.00 | -765.00 |
| 01/01/2025 | | Regular Assessments - January 2025 | 255.00 | | -510.00 |
| 01/01/2025 | | Storage Income - January 2025 - Storage Fee | 355.00 | | -155.00 |
| 02/01/2025 | | Regular Assessments - February 2025 | 255.00 | | 100.00 |
| 02/01/2025 | | Storage Income - February 2025 - Storage Fee | 355.00 | | 455.00 |
| 02/10/2025 | | Late Charges Income - Late fee February | 25.00 | | 480.00 |
| 02/18/2025 | | Late Charges Income - Jan late fees | 25.00 | | 505.00 |
| 03/01/2025 | | Regular Assessments - March 2025 | 255.00 | | 760.00 |
| 03/01/2025 | | Storage Income - March 2025 - Storage Fee | 355.00 | | 1,115.00 |
| 03/09/2025 | | Late Charges Income - Late fees March | 25.00 | | 1,140.00 |
| 03/19/2025 | | Filing Fees - lien fees | 198.72 | | 1,338.72 |

| **Total** | | | | | **1,338.72** |

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT E



# Las Vegas Jaycees Senior Citizens Mobile Home Community
### 5805 Harmon Ave.
### Las Vegas, Nevada 89103
### (702) 364-4931

## NOTICE OF INTENT TO SELL

### REQUIRED INFORMATION

**Date:**    March 15, 2025

**Space:**    305          **Home Size:**    24 FT X  52 FT = 1,248 SQ FT

I Susan Browne and Charles Mckinnoam listing my mobile home for sale as of

March 15, 2025                    **Phone #**    702-682-6912 / 702569-7364

Tita Marquez Mobile Homes LLC

My Home is being sold by : _____

Signature  *Susan Browne*                    .

### REQUESTED INFORMATION

Description of Home
    1994              CHAMPION -INFINITY II                    149,900.00
Year _____ Make/Model _____ Asking Price _____
                                                    *This price will not be on our sales list*

                    3                              2
Number of Bedrooms _____    Number of Baths _____

                    1994 1,248 Sq.Ft. 3 Bd 2Ba, Model Home, upgraded
Other descriptive information ____ To a new home. New AC /Furnace 2023 , front entrance ramp,
new kitchen cabinets, new vinyl flooring 2022, guest bathroom step-in-shower, queen size
rooms, Master bedroom king size ,walk-in-closet 10 x 6 approx, Wonderful built in Jacuzzi open
door in master bathroom. Living room skylight, textured walls, built-in-storage shed, shingle
roof, Enclosed deck, all appliances included, wood skirting, excellent home is in excellent
condition.  Many extras.
Must see to appreciate.  Pictures pending on website. https://www.tmlvmobilehomes.com

Showing requirements:  JC Resident Park Approval request from Seller by appointment.
Call Tita Marquez 619-655-9773 License dealer U-5080

This listing will be valid for a period of *120* days. You must then *re-submit* this form



Department of Business and Industry
# Nevada Housing Division
## Manufactured Housing

NV.gov    Agencies   Jobs   About Nevada

**ADA** Americans with Disabilities Act

## __Manufactured Home Title Information__

| | | |
|---|---|---|
| Title Number: **B0381775** | Issued: **03/11/2025** | Status: **Issued** |
| Serial Number: **09946364387AB** | | |
| Manufacturer: **CHAMPION** | | |
| Trade Name/Model: **INFINITY II** | | |
| Year: **1994**   Type: **Double Wide** | Size: **624in. x 142in.** | |
| | **612in. x 142in.** | |

Owners:      **BROWNE, SUSAN**
           **AND**
           **MCKINNON JR, CHARLES MICHAEL**

Physical Location:      **5805 W HARMON AVE #305 LAS VEGAS, NV  89103**

Lienholder:

Document Mailed To:      **BROWNE, SUSAN**
           **10806 MALTESE FALCON AVE LAS VEGAS NV  89129**

Cost of Structure:           Cost of Accessories/Materials:           Sales Tax:

Lien Date:      Lien Removed:      Notice of Opposition:      Notice of Lien Sale:      Date set for Auction:

**02/21/2025**

[ Show Title History ]    [ Print Title Certificate ]

*Your title will display in a new window. Please be sure to turn off any pop-up blocker to ensure that it displays.
**THE INFORMATION ABOVE IS CURRENT AS OF 3/13/2025 4:21:47 PM**
Title record last updated on 3/11/2025 3:46 PM

[ Back to Results ]

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT F



Keep this document in a safe place. A certificate of ownership document maybe required to sale, transfer, convert a structure to real property, or obtain financing.

Note: This document is sent without the County Assessor's Endorsement. You will need to get their endorsement below when you are ready to transfer title

STATE OF NEVADA
HOUSING DIVISION

**B0381775**

ISSUED

# Certificate of Ownership

**OWNERS:**
SUSAN BROWNE AND CHARLES MICHAEL MCKINNON JR
5805 W HARMON AVE #305
LAS VEGAS, NV 89103

**TOD:**

**LIENHOLDER:**

Serial No: 09946364387AB
Year: 1994
Make/Model: CHAMPION INFINITY II
Size: 624" x 142"    612" x 142"

WARNING:
There may be outstanding liens against this structure which do not appear on the face of this certificate. Interested person(s) should contact Manufactured Housing.

ISSUE DATE: 03/11/2025

THIS CERTIFICATE IS EVIDENCE OF LEGAL OWNERSHIP OF THE STRUCTURE IT DESCRIBES. THIS CERTIFICATE OF TITLE REMAINS IN FORCE AND EFFECT UNTIL ITS CANCELLATION.

WARNING:
ENDORSEMENT REQUIRED BY COUNTY ASSESSOR WHERE MOBILE HOME IS SITUATED THAT ALL TAXES HAVE BEEN PAID BEFORE TITLE CAN BE TRANSFERRED.

_____
SIGNATURE ASSESSOR OR DEPUTY ASSESSOR

**TO TRANSFER OR CHANGE TITLE RECORD, YOU WILL COMPLETE THIS FORM.** Additional forms and/or supporting documents may be required along with this document. There is a $60 fee, per titling transfer or record change. You will mail this form to our Carson City office for processing or drop it at one of the locations listed on the back of the form. *Complete documents must be submitted to the division with proper payment within 45 days of the transfer.*

**1.** **Contact Information** - Please provide the phone number and e-mail address of the party we should contact, if there are any issues with this titling.

Name: _____

Phone: _____    E-Mail Address: _____

Physical Address of Structure: _____

**What type(s) of transactions are you wishing to accomplish with this submission?**

☐ Home Sold/New Buyer          ☐ Remove Lienhold          ☐ Remove Deceased Owner          ☐ Reposession of home
                               (May add TL-102 or letter of No Interest)   (May require court order, death certificate   (Lienholder will add TL-101)
                                                                            or TL-106, if applicable)

☐ Change Owner Names          ☐ Add Lienholder          ☐ Gift Home          ☐ Other _____
                                                         (Parks will add TL-101)

*If you have titling questions, you may email us at titles@housing.nv.gov or call us at (888) 486-8775. You can visit HOUSING.NV.GOV to view and download titling forms.*

**2.** **Release of Lien Holder** - *If a lienholder is listed above, they must release their interest by attaching a TL-102 Lien Satisfied Form. This form can be found on our website at HOUSING.NV.GOV on the Titling page under Title Forms. We will also accept a Letter of No Interest (on Letterhead & Notarized.)*

**3.** **Trust Appointment and Powers** - *If the home is in a trust or will be placed into a trust, the Trustees or Successor Trustees must complete this section.*

| For Trustee(s) to Complete | For Successor Trustee(s) to Complete |
|---|---|
| I/We_____ | I/We_____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| Declare that I/We have been appointed as Trustee(s) of: | Declare that I/We have been appointed as Successor Trustee(s) of: |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

And have the powers granted as trustee(s) to sign for the transfer of the above described structure. I/We the trustee(s) jointly and severally indemnify the Nevada Housing Division, and hold the Nevada Housing Division and the State of Nevada harmless from any liability on the account of the issuance of a title on said structure as aforesaid.

And have the powers granted as successor trustee(s) to sign for the transfer of the above described structure. I/We the trustee(s) jointly and severally indemnify The Nevada Housing Division, and hold the Nevada Housing Division and the State of Nevada harmless from any liability on the account of the issuance of a title on said structure as aforesaid.

**4. Bill of Sale -** *Place the date the sale occurred and the dollar amount paid for the home. If gifting a home, you may place zero dollars.*

(I/We) as sellers further state that to (my, our) knowledge, the structure is free and clear of any liens encumbrances, lawful claims and demands to any person whatsoever, the structure is not involved in any existing or pending litigation. That in consideration of $ _____ and other valuable consideration, the receipt of whereof is hereby acknowledged, the undersigned (SELLER) does hereby, sell, transfer and deliver on the _____ day of _____ , 20_____ his/her right, title and interest in the above structure to the following purchaser.

**5. New Title Owners** **-** *Place the names of owner(s) as you wish them to appear on the title below. Please print legibly, all names to be shown on the title. Vesting is for situations where there are multiple owners only. If vesting is not selected, we will place an "OR."*

Print New Owners Name(s): _____

_____

Vesting between Names: ☐ OR ☐ AND ☐ JTWROS    (If appliable)

E-Mail Address: _____    (Your title will be e-mailed to you)

Mailing Address: _____
<table>
<tr><td>(Street)</td><td>(City)</td><td>(Zip)</td></tr>
</table>

**6. Beneficiary/Transfer On Death. -** *If you wish to appoint or change a beneficiary to this structure, please complete below. For more details, see NRS 489.564*

Select Action Required: ☐ ADD    ☐ Remove

Print New Owners Name(s): _____

**7. New Lienholder -** *Place the name(s) of lienholders here.*

Print  Lienholder Name(s): _____

E-mail Address: _____

Mailing Address: _____
<table>
<tr><td>(Street)</td><td>(City)</td><td>(Zip)</td></tr>
</table>

**8. The statements and declarations herein contained are for the specific purpose of inducing said Division to issue a Certificate of Ownership; that (I, we) shall and will assume, fully pay, satisfy and discharge any and all liens, claims or encumbrances disclosed herein or any others that may be shown or proved to be upon or against said structure and indemnify and hold harmless said Division and the State of Nevada on account of the issuance of said Certificate of Ownership on said structure as aforesaid.**

**9.  Signatures and Notary of Seller(s) -**
*Sign in front of Notary.*

_____    _____
SIGNATURE                          DATE

_____    _____
SIGNATURE                          DATE

_____    _____
SIGNATURE                          DATE

_____    _____
SIGNATURE                          DATE

This Instrument was acknowledged before me on this
_____day of_____, 20_____
By_____and_____

STATE OF_____

COUNTY OF_____

_____
Notary Public

Above signatures of the OWNERS as described on the face of this
Certificate releases the OWNER's interest in the described structure.

**10.  Signatures and Notary of New Titled Owner(s)**
*Sign in front of Notary.*

_____    _____
SIGNATURE                          DATE

_____    _____
SIGNATURE                          DATE

_____    _____
SIGNATURE                          DATE

_____    _____
SIGNATURE                          DATE

This Instrument was acknowledged before me on this
_____day of_____, 20_____
By_____and_____

STATE OF_____

COUNTY OF_____

_____
Notary Public

Above signatures of the OWNERS as described on the face of this
Certificate releases the OWNER's interest in the described structure.

**Carson City Office**

**1830 E College Parkway Ste 120**
**Carson City, Nevada 89706**
**Phone: (775)684-2940**



**Las Vegas Office**

**3300 W Sahara Ave Ste 320**
**Las Vegas, Nevada 89103**
**Phone: (702) 486-4135**