Wilde & Associates, LLC.
GREGORY L. WILDE, ESQ.
Nevada Bar No. 4417
7473 W. Lake Mead Blvd. #100
Las Vegas, NV 89128
Phone (702) 562-1202
greg@wildelawyers.com
Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

oOo

IN RE

URSULA LICHTENSTEIN,

         Debtor(s).
_____/

Case No. 25-10340-nmc
CHAPTER 13

REPLY TO OPPOSITION TO HOLD JAYCEE'S SENIOR CITIZEN MOBILE HOME PARK IN CONTEMPT

Debtor, Ursula Lichtenstein, files the following Reply to Opposition to hold Jaycee's Senior Citizen Mobile Home Park in Contempt.

**1.    Background**

The background is more fully set forth in the Debtor's Motion for Contempt (ECF 32) and in Jaycee's Opposition (ECF 45). However, the following facts are relevant for this Reply.

**On January 2, 2025**, the Justice Court entered formal Findings of Fact and Conclusions of Law, staying the Writ for five judicial days. Thus the eviction had not been completed as Jaycee's would have this Court believe.

Likewise, the Writ is one of "restitution" meaning, once executed by the Sheriff, it *restores* the premises to the landlord. Something that still has not happened, thus there has been no eviction as Jaycee's would have this Court believe.

**On January 8, 2025**, the actual Writ of Restituion was issued. However, the Justice Court had not entered a final order or judgment. *(See Writ attached as exhibit "1" to the motion")*.

**On January 21, 2025**, the Debtor filed these Chapter 13 proceedings having paid her **rent for the space through March 31, 2025,** which is undisputed.

**On February 18, 2025**, this Court heard argument on the Jaycee's motion for relief. Again, demonstrating that the eviction has not taken place and acknowledged by both parties in that the following language contained in their competing orders.

***IT IS FURTHER ORDERED, AJUDGDED, AND DECREED that eviction proceedings shall be limited to removing the Debtor from the real property ….***
*(See exhibit "3" to the motion)*.

The same day as the **February 18, 2025** argument before the Court, the Jaycee's Manager ***created, issued, and served*** the lien attached as exhibit "4" to the motion. The opposition filed by the Jaycee's is an attempt to mislead the Court by claiming that it was merely *"perfecting"* a lien that had arisen prior to the bankruptcy filing.

The following statement from the Jaycee's oppsoition is also a mischaracterization of what transpired.

***The combination of the finalized and unappealable eviction and the fraudulent transfer of the home to a nonqualifying owner are sufficient to trigger the increased storage rent as of January 1, 2025. Jaycees began to add the increased storage rent to the ledger as of that date. See Ledger, attached as Exhibit D.***

*Id*. *at page 5, lines 11-15*    As stated previously, this is a flawed argument because an eviction had not taken place as of January 1, 2025, and still not has taken place, triggering a calculation of increased storage.

In other words, this January 1, 2025 date is actually a date *before* the Justice Court's ruling, while the Debtor was still not unlawfully detaining, before an eviction had been wrought, and certainly before any storage could have been accruing.

Further, the following statement from the Opposition is an admission that the lien was not created pre-petition, was premature, and was therefore in violation of the automatic stay.

> ***Although it appears that the notice of lien pursuant to NRS 108 was issued prematurely on the home as it failed to account for the pre-paid base rent, <u>Jaycees is within its rights to place a lien</u> on the home for accumulated unpaid rent in accordance with NRS 108. Jaycees will agree rescind the current lien filig until proper time under Nevada's statutory provisions in Chapter 108 of the Nevada Revised Statutes, but intends to file a corrected lien in April.***

<u>Id</u>. at page 6, lines 20-26. (Emphasis added).   The Court should note the term "place a lien". This is not "perfection" of a lien, it is the creation of the lien.  The "attahcment" process necessary before a party can "perfect" a lien later.

As will be detailed in the upcoming Adversary Complaint to fully recoup the Debtor's interest in the Mobile Home, on December 21, 2024 the Debtor *"mistakenly"* endorsed the certificate of title with respect to her 1994 Champion Infinity Mobile Home over to her daughter Susan Browne. See exhibit "C" to Jaycee's Opposition. ECF 45.

On or about March 11, 2025 a new certificate of title for the Champion mobile home was issued by the Department of Manufactured Housing. It was issued in the names of Susan Browne and Michael Mckinnon, Jr. . Id at exhibit "F". ECF 45.

A side by side comparison of these two titles is warranted. The certificate of title endorsed by the Debtor has also been signed by the Assessor or Deputy Assessor. Please see page one, top right side of exhibit "C" for the signature. It was signed by one A. Sloan #046960.

The March 11, 2025 certificate of title (exhibit "F) also bears a signature line for the the Assessor or Deputy Assessor, yet it is blank. It ***has not been signed*** by the Assessor or Deputy Assessor.  This is not a distinction without a difference.

As will be discussed in the supporting points and authorities, the county assessor must provide to the "Division" (the Housing Division of the Department of Business and Industry) verification that all personal property taxes on that manufactured home or mobile home for the

fiscal year have been paid[1]. No transfer of a manufactured home will be recognized without this verification, and the verification is the assessor's signature on the certificate of title.

The purpose of this rule is to insure all transfer/property tax has been paid. Because the March 11, 2025 title is not signed off by the Assessor, title to the 1994 Champion Infinity Mobile Home never passed from the Debtor to Ms. Browne.

**2.      Jaycee's Violated the Automatic Stay by creating, issuing, and noticing a lien post-petition.**

The primary case cited by Jaycee's is not applicable to the situation before the Court. The opposition takes the position that its right to lien is akin to a mechanic's lien procedure and Jaycee's was merely "perfecting" a lien it thought it had pre-petition.   Such is not the case.  It is clearly a post petition event prohibited by the automatic stay and confusingly claims to be calculated pre-petition but then admittedly agrees it is premature and will be withdrawn.    The following three excerpts from In re Badea, No. 2:15-BK-10638-GS, 2018 WL4441731, at *4 (B.A.P. 9th Cir. Sept. 17, 2018) demonstrates that it is not applicable to the  factual pattern currently before the Court.

*.... [§]546(b) permits postpetition **perfection** of a lien if state law provides that upon perfection the lien is superior to other liens or encumbrances having priority in time." Indus. Indem. Co. v. Seattle-First Nat'l Bank (In re N. Side Lumber Co.), 83 B.R. 735, 738 (9th Cir. BAP 1987), aff'd, 865 F.2d 264 (9th Cir. 1988) (unpublished opinion).*
Id. at page 10. (Emphasis added).

*Generally, the act of perfecting a mechanics' lien would be excepted from the automatic stay pursuant to § 362(b)(3) and § 546(b)(1)(A). **The usual case** involves a contractor who began work and obtained an inchoate mechanics' lien prepetition, and the property owner files for bankruptcy before the contractor was able to perfect the lien. Under § 362(b)(3) and §*

---
[1] NRS 489.531

*546(b)(1)(A), the contractor may perfect the mechanics' lien postpetition without violating the automatic stay.*

Id. at page 12-13.

There is also the issue of what appears to be a postpetition creation of a mechanics' lien. ***Indeed, while postpetition perfection of a mechanics' lien may be permissible, the creation of such a lien postpetition is not***. See In re N. Side Lumber Co., 83 B.R. at 738. The exception under § 362(b)(3) and § 546(b) is only for perfection. The § 362(a)(4) prohibition on any act to create a lien retains its force despite § 362(b)(3) and § 546(b).

Id. at Page 13. (Emphasis added).

Jaycee's creation of the lien was "post-petition" and was not a "perfection" of a pre-petition lien and therefore does not meet the exception of 11 USC 546(b).  Therefore, its conduct was and continues to be in violation of the automatic stay.

**3.    The Contact from the Jaycee's Manager also violated the automatic stay.**

The continued contact from the Jaycee's Manager to the Debtor is in violation of the automatic stay.  Contrary to the declaration of the Manager, the evidence will show that the phone calls were "incoming" to the Debtor from the Manager's cell phone or his office and not "outgoing" from the Debtor.  Debtor's counsel needs time to subpoena and produce these records.

The Debtor is specifically requesting that this Court hold an evidentiary hearing where she can testify and submit her telephone records which are contemporaneous records of the number and dates of the incoming calls from Jaycee's Manager.

An evidentiary hearing is required so the Debtor can further demonstrate the calls were to induce her to make personal payments. In re Marino, 577 B.R. 772, 783–84 (B.A.P. 9th Cir. 2017), *aff'd in part, appeal dismissed in part,* 949 F.3d 483 (9th Cir. 2020).

Further, the Ninth Circuit has allowed emotional distress damages for automatic stay violations when the debtor "(1) suffer[s] significant harm, (2) clearly establish[es] the significant harm, and (3) demonstrate[s] a causal connection between that significant harm and the violation of the automatic stay. In re Marino, 577 B.R. at 787.

**4.     The Mobile Home is clearly property of the estate.**

Jaycee claims it has not violated the automatic stay because (i) the manufactured home was transferred from the Debtor estate in December 2024, meaning that the home is no longer party of the Debtor's estate.  This is also an argument created to distract the Court from what transpired.  The new title, which is voidable, was issued in March 2025, two months AFTER the stay was violated by the Jaycee's Manager.  He could not have known about the upcmoing "new" title in January 2025. Further, he did not know of the alleged transfer late in December 2024, before his violative conduct.

Even if the Court followed this line of reasoning, that Jaycee was acting under the impression the mobile home was not property of the estate, why would the Jaycee manager address the lien to the Debtor and the bankruptcy court, specifically denoting the case number? Finally, the Debtor has a legal and equitable interest that Jaycee was aware of, which is property of the estate.

    A.    <u>THE DEBTOR'S EQUITABLE INTEREST IN THE MANUFACTURED HOME IS PROPERTY OF THE ESTATE</u>

11 U.S.C. §541(a)(1) describes property of the Estate to include: "Except as provided in subsections (b)[1] and (c)(2)[2] of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

The certificate of title that was endorsed by the Debtor on December 21, 2024 (Exhibit "1") bore the signature of the Assessor. This is required by NRS 489.531 which states:

---

[1] The relevant exceptions to the automatic stay in §362(b) have been described in the previous section.
[2] §362(c)(2) applies to a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title, which is inapplicable in this case.

> The Division <u>shall not issue a certificate of title</u> of a used manufactured home or used mobile home <u>unless the county assessor</u> of the county in which the manufactured home or mobile home was situated at the time of sale <u>has provided to the Division</u>, on a form prescribed by the Division, <u>verification that all personal property taxes on that manufactured home</u> or mobile home for the fiscal year have been paid.

(Emphasis Supplied)

The "Form" supplied by the Division is the Certificate of Title itself. It bears the signature line for the Assessor or Deputy Assessor. The Assessor's endorsement is verification that all personal property taxes on that manufactured home or mobile home for the fiscal year have been paid.

The March 11, 2025 certificate of title is not signed by the Assessor or Deputy Assessor, making the issued title voidable. The fact that the title in Ms. Browne and Mr. Mckinnon, Jr.'s names is conclusive evidence of their absolute ownership. Because the title is voidable, the Debtor holds some rights in the manufactured home. Namely to void the title for the Divison's violation of NRS 489.531.

While federal law describes what is and is not property of the estate; the Debtor's actual property rights are defined by state law. <u>Butner v. United States</u>, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

<u>In re Musel</u>, 631 B.R. 744 (Bankr. D. Minn. 2021) examined §541(a)(1). It noted that Property interests can be tangible goods or "general intangibles," as defined by the Uniform Commercial Code. Id 631 B.R. 749-750.

Nevada has enacted its version of the Uniform Commercial Code. Under NRS 104.9102(1) "'General intangible' means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas or other minerals before extraction. The term includes controllable electronic records, payment intangibles and software".

According to the Drafter's Comments to that definition "General intangible is the residual category of personal property, including things in action, that is not included in the other defined types of collateral". Please see Comments, Section 5(d).

The Debtor's right to void the March 11, 2025 certificate of title is a general intangible, and it therefore constitutes property of the estate under 11 U.S.C. §541(a)(1).

### B. THE PRE-PETITION UNLAWFUL DETAINER ORDER DID NOT EXCLUDE ALL OF 11 U.S.C. §362(A)'S PROTECTIONS

11 U.S.C. §362(b)(22) excludes the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor.

This exclusion has limits. The introduction says "subject to subsection (l), under subsection (a)(3)".

Section 362(a)(1) stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title".

Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate".

So the way 11 U.S.C. §362(b)(22) operates is to first reference the general stay of the commencement or continuation of actions against the Debtor. The second reference to subsection (a)(3) and the language following that reference limits the types of actions stayed to those for unlawful detainer.

What 11 U.S.C. §362(b)(22) does <u>not</u> exclude is the stay imposed by 11 U.S.C. §362(a(6) which stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title".

The Manager's communications to the Debtor violate §362(a)(6). He was trying to get her to pay an imaginary amount that was admittedly "pre-maturely" calculated. This is further evidence of where the intentional stay violation lies.

### C. THE MANAGER'S POST-PETITION COMMUNICATIONS WENT BEYOND ANY ENFORCEMENT OF LIEN RIGHTS AND CONSTITUTED A STAY VIOLATION

Jaycee's defenses are that the manufactured home had been transferred, and that the perfection of liens is excluded from the provisions of the automatic stay.

This leaves the communications described by the Debtor by Jaycee's manager. Those statements are express actions to collect the pre-petition rent owed to Jaycee. That is stayed by 11 U.S.C. §362(a(6).

*In re Ray,* 355 B.R. 253, (Bankr. D. Or. 2006) held that both direct actions and indirect actions violate §362(a)(6). In that case the Court said:

> Code §362(a)(6) prohibits any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case ...." While direct actions to collect a debt clearly violate § 362(a)(6), coercive, indirect actions whose aim is to induce payment also violate the automatic stay provisions of §362(a)(6).

Id 355 B.R. at 258 Citations Omitted

The *Ray* Court also set forth the elements required in order to prove damages under §362(k). It said "Violation of the automatic stay is willful so as to warrant an award of damages if (1) creditor knows of the automatic stay, and (2) actions that violate the stay are intentional. A party's good-faith belief that the stay is not being violated is not relevant to whether the violation is "willful" or whether compensation must be awarded". Id 355 B.R. at 258-59, citing *In re Peralta,* 317 B.R. 381, 389 (BAP 9th Cir.2004).

**5.    Conclusion**

The Debtor needs to make her record. In her Motion and in this Reply, she has made a prima facie case for an intentional stay violation.

The repeated stay violations of the Jaycee's was on the attempted collection of a lien improperly made and continued with the threats made by its Manager via phone.

In light of the foregoing, the Debtor requests that at the time of the hearing on her Motion, this Court set a date and time for an in person evidentiary hearing after a reasonable discovery period transpires.

Dated this 1st day of April 2025.

By: <u>*/s/ Gregory Wilde*</u><br>
Gregory L. Wilde, Esq.<br>
Attorney for the Debtor