John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No.: 25-10340-nmc |
|---|---|
| URSULA LICHTENSTEIN, | Chapter 13 |
| Debtor. | **JAYCEES SENIOR CITIZEN MOBILE HOME PARK'S EVIDENTIARY HEARING MEMORANDUM** |

## 1.      Introduction

Debtor Ursula Lichtenstein ("Lichenstein") seeks sanctions against Creditor Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees") based on claims that Jaycees violated the Automatic Stay under §362(a).  Lichtenstein seeks actual damages, attorney fees, and other damages based on (i) allegations that the service of a lien under NRS 108 is a violation of the automatic stay; (ii) enforcement of a pre-petition state court permanent writ of possession is an violation o the automatic stay; and (iii) unsupported claims that Jaycees, through its manager, has been harassing the Debtor and seeking to recover payments for rent against her.

 First, because the order terminating the lease and directing the issuance of a permanent writ of possession all occurred prior to the bankruptcy petition, the automatic stay never applied

to the eviction and completing the eviction is not a violation of the automatic stay. Although Jaycees did file a motion with this Court seeking an order finding that the automatic stay did not apply to the eviction or, alternatively, lift the stay, the Court's order lifting the stay suggests that the stay did not apply. The Court specifically stated that the stay was lifted "to the extent necessary" to allow the eviction to occur clearly suggesting what Jaycees had argued all along – that the automatic stay did not apply to a prepetition order for unlawful detainer and permanent writ of possession.

Second, the manufactured home was voluntarily transferred from the Debtor estate in December 2024. Title to the manufactured home is clearly not in the name of the Debtor and the Debtor must overcome the evidence that the Debtor voluntarily transferred the manufactured home and the clear title issued to a non-debtor before the home can be considered part of the Debtor's Estate.

For these reasons, the Court should not grant Debtor's request to include these new facts and allegations in the evidentiary hearing set several months ago.

## 2.      Statement of Facts

Although there have been several related motions on these issues, Jaycees will restate all of the facts here to ensure that the Court has all relevant facts, especially in light of the Debtor's abbreviated and misleading statement of the facts.

**A. Jaycees' initial relationship with Debtor and the lease between Debtor and Jaycees.**

Jaycees is a non-profit entity that owns a mobile home community located at 505 West Harmon Avenue, Las Vegas, Nevada 89103 (the "Park"). Debtor is an evicted resident at the Park who resided at the manufactured home that sits on Space #305 (the "Premises"). Debtor

and Susan Browne obtained title to the manufactured home located on the Premises (the "Manufactured Home."

In order to live in the Park, Lichtenstein executed a Mobile Home Lot Lease. The Mobile Home Lot Lease provides that with limited exceptions not relevant here, "the Resident must be the sole owners or co-owner of the mobile home. *See* Mobile Home Lot Lease, § 16(A). Further, the Mobile Home Lot Lease provides that "if the Resident sells or otherwise disposes of his/her mobile home to a buyer or occupant who is not eligible for tenancy in the mobile home park . . . the selling or disposing Resident or his/her legal representative must notify management of the date of the sale or disposition and the name of the buyer or recipient and the mobile home must be removed from the park within forty-five (45 days) after the close of the sale or disposal." *Id.* § 16(A). Further, "Space rental must be paid to the Management for the full time the mobile home occupies space in the mobile home park." *Id.*

Lichtenstein also executed a Mobile Home Lat Rent/Storage Agreement Lease Addendum (the "Addendum") which provides that:

> Should a resident chose [sic] to move out of the community and/or be evicted from the community, the person on the lease or the responsible party is then advised the elevated storage rent rates goes [sic] into effect immediately. This being at the rate of two (2) times the current space rent plus **One Hundred dollars ($100.00)** which is due on the first of the month, with late charges of **Twenty-Five ($25.00)** incurring following the close of business the fifth day of the month. Failure to comply with the elevated Rent Storage Agreement will result in the mobile home being subject to a Landlord Lien with all rent, late, and legal fees to be paid in full in order to reinstate the Storage Rent Agreement and have the Landlord Lien removed.

*See* Addendum.

The lot rent for the space prior to the eviction proceedings was $255 per month. Therefore, the increased storage rent would be an additional $355 per month.

**B. Eviction proceedings against Debtor**

Jaycees commenced an eviction action against debtor in or about March 2024 based on Debtor's actions in the Park that violated her lease agreement, the Park's rules and Chapter 118B of the Nevada Revised Statutes that governs leases in spaces in mobile home parks and manufactured communities. The Complaint alleged that the Debtor had committed acts that violated criminal statutes concerning the exploitation of an elderly person under Nevada Revised Statute 200.5092(3), which also constitutes a nuisance and is a basis for terminating a lease and seeking unlawful detainer under Nevada Revised Statute 118B.200(1)(f).

On or about October 23, 2024, and then again on November 12, 2024, the Las Vegas Justice Court held a bench trial in the unlawful detainer matter. On December 17, 2024, the Justice Court issued a minute order finding that Debtor was a nuisance in the Park as defined in NRS 118B.190(1)(b) and NRS 118B.200(1)(f) and specifically found that Debtor had exploited an older person in the Park by obtaining control of their money, assets and property and converting the same.

On January 3, 2025, the Justice Court entered formal Findings of Fact, Conclusions of Law, and Order in which the Court ordered that a permanent writ of restitution should issue but should be stayed for five judicial days from the date it is issued. A true and correct copy of the Findings of Fact and Conclusions of Law is attached to the Emergency Motion (Doc. 8), at Exhibit 3. In that order, the Court found that "Plaintiff has established by a preponderance of the evidence all the elements for an unlawful detainer under NRS 118B.200 and is entitled to a Permanent Writ of Restitution of the premises." *Id.* at p. 8. The court's order also provided that a Permanent Writ of Restitution would be entered and that the "decision on the costs shall not delay the issuance of the permanent writ." *Id.* at p. 9. On January 8, 2025, the Justice Court

issued a Permanent Writ of Restitution ordering that the Premises be restored to Jaycees. Based on the order entered on January 3, 2025, and the Permanent Writ of Restitution being issued on January 8, 2025, there was a clear final order entered for eviction. The only thing that remained was for a judgment to be entered on the costs pursuant to NRS 69. Debtor's claim that there was no order for eviction prior to the petition is wrong. Indeed, the judgment later entered for the purpose of quantifying Jaycee's claim in the bankruptcy only specifically stated that as part of the Findings of Fact and Conclusions of Law entered on January 3, 2025, the justice court "ordered that a permanent writ of possession would issue." Indeed, the Judgment only further confirmed what the justice court had already ordered, "that the premises knowns as Space 305, 5805 West Harmon Avenue, Las Vegas, Nevada, presently occupied by defendant shall immediately be restored to plaintiff." *Id.* at 2.

**C. Title transfers of the manufactured home.**

On or about December 21, 2024, just after the state court issued its decision on December 17, 2024, Debtor voluntarily executed documents transferring her interest in the manufactured home to Susan Browne. Thereafter, on January 27, 2024, before MHD processed the title documents signed by Debtor, Susan Browne executed documents transferring her and the Debtor's interest in the mobile home to herself and Charles McKinnon, Jr. On March 11, 2025, the Manufactured Housing Division ("MHD") issued a new certificate of title showing that the title owners of the mobile home are Susane Browne and Charles McKinnon. Since that time Susan Browne has claimed she owns the Manufactured Home and been making efforts to sell the manufactured home initially by retaining a listing agent. Further, it is clear that both Lichtenstein and Brown agreed to the transfer by signing off on it.

/ / / /

**D. Bankruptcy proceedings.**

Debtor petitioned for bankruptcy under Chapter 13 on January 21, 2025, after the justice court issued an order granting an eviction on January 3, 2025, and had signed and filed the Permanent Writ of Restitution was issued on January 13, 2025. She herself admits that she only filed the bankruptcy in order buy her more time to stay in the Park and ultimately attempt to sell her home.

On January 27, 2025, Jaycees filed the Emergency Motion seeking an order from the Court clarifying that the eviction of Debtor based on the justice court's pre-petition orders, including the Permanent Writ of Restitution, was not subject to the automatic stay and only sought in the alternative to lift the stay to allow the eviction to be completed. (Doc. 8). The Court held a hearing on the motion and determined that the motion should be granted. Two competing orders were submitted to the Court. Ultimately, the Court entered an order on the motion on May 12, 2025, that found that "to the extent the [automatic] stay might apply, cause exists to lift the automatic stay . . . for the purpose of executing on the Permanent Writ of Possession [Restitution] issued by the Las Vegas Justice Court in Case No. 24C008342." (Doc. 70). The Court's language suggests, as Jaycees has argued, that the automatic stay does not apply to the pre-petition order granting eviction and Permanent Writ of Restitution pursuant to 11 U.S.C. § 362(b)(22). At the very least, the Court did not determine whether the automatic stay applied or not.

**E. Eviction of Debtor**

Although the Court informed the parties that it would grant Jaycees motion in February 2025, the actual order was not entered until May 12, 2025. In the meantime, Debtor remained in the home for months, despite having been found to have committed acts against other residents

Page 6 of 17

constituting elder abuse. Although Jaycees had a writ of possession, in an abundance of caution, it waited to get the order confirming the stay was inapplicable before proceeding with an eviction. During that same time, Debtor, who had been charged criminally for elder abuse and appeared in the state court to respond to those criminal charges, was arrested on or around April 11, 2025 for violations of the no-contact orders in the criminal court. The manufactured home was therefore unoccupied, and Jaycees did not know whether the Debtor would ever return to the home or who was controlling access to the home. During this time, a licensed dealer had placed a lock on the home at the request of Susan Browne, not the Debtor, and had informed Jaycees that she was the owner of the home and would be looking to sell it.

On or about April 16, 2025, while Debtor was incarcerated and Jaycees did not know if she would get out of jail again, Jaycees did complete a lock-out based on the pre-petition state court order and Permanent Writ of Restitution and secured the property and the manufactured home. Jaycees did remove a lock placed there by the licensed dealer representing Susan Browne, a lock that did not belong to the Debtor. Ultimately, when the Debtor was released from jail after agreeing to a plea deal on or about April 23, 2025, at 4:30 in the morning, Jaycees decided to let Debtor back into the home for a brief period of time to arrange to move her things so she would have a place to stay. In late May 2005, Jaycees was again required to change the locks when Debtor would not surrender the keys and Jaycees needed to again ensure that the property was secured. Debtor has not remained in the manufactured home since that time.

**F. NRS 108 Lien**

Because storage rent continues to be owed for the time that the Manufactured Home continues to be in the Park from the time that the Permanent Writ of Restitution was issued through to today, Jaycees did direct the serving of a notice of lien that would perfect and

maintain its lien rights during the bankruptcy. The notice of lien document is a mandated form required by the Manufactured Housing Division ("MHD") and its language cannot be changed. The Notice of Lien is not a violation of the automatic stay because such liens area an exception under § 362(b)(3) and § 546(b) of the Bankruptcy Code.

### G. Adversary proceeding between Debtor and Susan Browne

Around this same time, in late March or early April 2025, Debtor commenced an adversary proceeding against Susan Browne claiming that she did not mean to sign over title to the manufactured home when she signed the documents in December 2024. Susan Browne filed a motion to dismiss the adversary proceeding claiming that the manufactured home was always to belong to her and that Debtor did intend to transfer title to her based on these previous understandings. Debtor has never opposed the motion to dismiss and it has been pending for several months.

## 3. Legal Argument

### A. The notice of lien here does not violate the automatic stay because the debtor does not have title to the manufactured home.

Section 362(a) of the Bankruptcy Code provides that a petition for bankruptcy under any of the applicable titles operates as a stay of "any act to create, perfect, or enforce a lien against property of the estate." 11 U.S.C.A. § 362(a)(3). It also stays "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." *Id.* § 362(a)(2).

However, the stay only applies to property that belongs to the debtor estate at the time of the alleged act. *In re Badea*, No. 2:15-BK-10638-GS, 2018 WL 4441731, at *5 (B.A.P. 9th Cir. Sept. 17, 2018). Here, Lichtenstein executed documents to transfer title of the manufactured

home to Susan Browne on December 21, 2024, and submitted the documents to MHD immediately thereafter. Further, title to the Manufactured Home was issued on March 11, 2025 to Susan Browne and Charles McKinnon. The debtor is no longer on title at all. Based on this fact alone, there is no violation of the automatic stay.

It does not matter that Debtor is claiming an interest in the Manufactured Home. Based on the facts we have, Debtor's claim is extremely suspect because Debtor cannot deny that she signed and voluntarily transferred the home.

As noted previously, the only reason there can even be a colorable argument that such a non-monetary eviction proceeding might violate the automatic stay is where the manufactured home is owned by the estate. Here, the title has been issued in the name of a non-debtor. As such, any acts against the manufactured home cannot have violated the automatic stay. Title of manufactured homes is governed by state law under Chapter 489 of the Nevada Revised Statutes. Specifically, the Manufactured Housing Division has authority to regulate the titling and transferring of title of manufactured homes in the state. *See* NRS 489.231(4); NRS 489.501-.585. Debtor must overcome clear evidence, including her own admissions, that the manufactured home was in fact voluntarily transferred. She cannot seek to bring property back into the estate for the sole purpose of claiming an exemption when the property was voluntarily transferred to begin with. *See* 11 USC § 522(g)(1)(A). Accordingly, by the Debtor's own admission, she did not have protectable title to the Manufactured Home prior to filing her bankruptcy petition and did not have a possessory interest in the mobile home given the issuance of the Permanent Writ of Restitution prior to the bankruptcy filing.

/ / / /

**B. An owner or landlord of a mobile home park acts to provide notice are acts to maintain or perfect a lien it already has for rents and related services and do not violate the automatic stay.**

The filing of a petition stays "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." *Id.* § 362(a)(2). Section 362(a) of the Bankruptcy Code provides that a petition for bankruptcy under any of the applicable titles operates as a stay of "any act to create, perfect, or enforce a lien against property of the estate." 11 U.S.C.A. § 362(a)(3).

However, the petition for bankruptcy does not act as a stay as to any act under subsection (a) "to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." 11 U.S.C.A. § 362(b)(3).

Section 546(b) of the Bankruptcy Code sets forth limits to the Trustees power and specifically states that those powers are "subject to any generally applicable law that-- (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C.A. § 546(b)(1). The only limitation on these powers is if the maintenance of the lien "requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and such property has not been seized, or such an action has not been commenced before the date of the filing of the petition." 11 U.S.C.A. § 546(b)(2).

The Ninth Circuit Bankruptcy Appellate Panel has found that mechanics' lien law in Nevada, which is another lien statute under Chapter 108 of the Nevada Revised Statutes "is a 'generally applicable law' falling within § 546(b)." *In re Badea*, No. 2:15-BK-10638-GS, 2018 WL 4441731, at *4 (B.A.P. 9th Cir. Sept. 17, 2018).

Nevada's lien statutes applicable to mobile home parks are akin to mechanic's liens in that the lien created by virtue of the relationship of the owner of the land with the owner of the manufactured home that sits upon its land and the notices required to perfect the lien fit within the exceptions set forth in § 546(b). Nevada statutes provide that "A person engaged in the business of . . . [k]eeping a mobile home park . . and who in connection therewith stores, maintains, keeps or repairs any . . . mobile home or manufactured home . . . at the request or with the consent of the owner or the owner's representatives . . . *has a lien upon* the . . . mobile home or manufactured home or any part or parts thereof for the sum due for the . . . storing, maintaining, [or] keeping the . . . mobile home or manufactured home . . . and for all costs incurred in enforcing such a lien." NRS 108.270(1) (emphasis added).

The statute provides that it has a lien upon the manufactured home when it stores, maintains, or keeps the home on a lot. Other provisions of the statutory scheme provide the procedures for perfection or maintaining the lien, including the timing and notice requirements. For example, with respect to liens for rent of a space upon which the mobile home or manufactured home sits, the procedure requires certain notices to be made within certain time periods that must be met to eventually enforce the lien. *See, e.g.,* NRS 108.272 (providing information about who should be notified of the lien); NRS 108.315 (setting forth the timing of when notices for rent should be sent in order to preserve and/or maintain the lien). The notices

sent in this case were sent pursuant to the requirements of NRS 108.315 that provide the required notices that must be sent in order to maintain and perfect the lien.

In other words, the lien belonging to an owner of a mobile home park against the manufactured homes in the park exists by virtue of the park's relationship with the person who owns the mobile home and has it placed or located on the land, and it was created when that relationship commenced. The perfection or maintenance of the lien requires the notices to be sent, but do not create the lien, which exists by virtue of the relationship between a mobile home park owner and an owner of a manufactured home that is located within the park.

Here, the notice that was sent pursuant to NRS 108.315 is a notice that is required to maintain or perfect a lien that was already created and therefore exempt from the automatic stay. Even if it was done prematurely here, it is still not a violation of the automatic stay.

**C. The judgment itself is not a violation of the automatic stay.**

Debtor complains that the language in the judgment that states that it "shall constitute a lien upon the mobile home, and the contents contained therein, pursuant to, and to the extent allowed under NRS 108 et. Seq. and/or NRS 21" in and of itself is a violation of the automatic stay. However, the Justice Court entering this judgment is not an act to create, prefect, or enforce a lien. It is merely a statement of law that a lien may exist under NRS 108 or NRS 21. As discussed *supra*, a lien in favor of an owner of a mobile home park exists under NRS 108.272 by virtue of the relationship between the owner of the park and the owner of the manufactured home that is located on a space in the park and only covers rents and other services provided in the park. Because the judgment is for attorney fees a lien is not likely to be allowed. Even if it were, the language in the judgment does not create, perfect, or enforce the lien because it was already created. Similarly, Chapter 21 of the Nevada Revised Statutes simply outlines the

procedures and steps for executing on a judgment. Therefore, the language in the judgment does not create something that did not already exist by virtue of the judgment that this Court allowed to be entered even without the language that the debtor complains of. There is no "act to create, perfect, or enforce" a lien. The act would be if Jaycees sought to attach, garnish, or execute the judgment, which it has not done here. The parties stipulated to stay relief to allow the judgment to be entered. That is all that has happened here. The language in the judgment is simply not an act that would create, perfect, or enforce any lien and therefore cannot be a violation of the automatic stay.

### D. Enforcement of a pre-petition writ for permanent restitution does not violate the automatic stay.

The automatic stay does not apply to a pre-petition writ of permanent restitution. The Court has not determined that the automatic stay applies to the pre-petition order for eviction and the issued Permanent Writ of Restitution. The bankruptcy laws concerning the automatic stay make it clear that they do not operate to stay a permanent writ of restitution for unlawful detainer issued prior to the filing of the bankruptcy. 11 U.S.C. § 362(b)(22) provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
>
> …
>
> (22) subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

This only time that the stay might apply is under 11 U.S.C. § 362(l) which allows a debtor to certify that it will cure the bases for the unlawful detainer within a certain time period.

The Court should find that the automatic stay did not apply to Jaycees' eviction action pursuant to 11 U.S.C. § 362(b)(22). The Premises at issue is exactly the instance 11 U.S.C. § 362(b)(22) is created to protect as the district court case is an eviction and unlawful detainer action of a residential property in which the debtor resides as a tenant was renting and the movant obtained an order and permanent writ of restitution for possession of the Property prior to filing the bankruptcy petition.

The Ninth Circuit has found that, when an eviction order has been issued prior to a bankruptcy action, "at the time of the filing of the bankruptcy petition, [the debtor] had been completely divested of all legal and equitable possessory rights that would otherwise be protected by the automatic stay." *In re Perl*, 811 F.3d 1120, 1130 (9th Cir. 2016) ("[T]he prevailing party in the unlawful detainer proceeding under [California law] has better title than the evicted resident."). Like here, the state court has found the debtor has no legal possessory right in the property and had already ordered that a permanent writ of possession issue. Further, the permanent writ of possession also issued prior to the petition for bankruptcy. As such the debtor could not be protected by the automatic stay.

Further, unlawful detainer found by the Las Vegas Justice Court here is based on a non-monetary and uncurable nuisance as specifically defined in Nevada Revised Statute 118B.200(1)(f). Because the basis for the unlawful detainer is non-monetary and based on nuisance behavior, it is not curable. Therefore, the exception set forth in 11 U.S.C. § 362(l) does not apply. This is because the Debtor cannot submit any certification that finding of unlawful detainer is curable. It is not. A nuisance, especially the one at issue in this case, cannot be cured and Jaycees is entitled to obtain possession of the Premises. The automatic stay does not apply

to such an eviction and the enforcement of the Permanent Writ of Possession cannot be a violation of the automatic stay.

Debtor argues that because the judgment on the fees and costs was not entered until after the petition for bankruptcy that means that the Permanent Writ of Restitution could not have been enforced until the judgment was entered. This is not accurate. Though the judgment on fees and costs was not entered, the state court had already issued an order that found Debtor was guilty of an unlawful detainer and ordered that the Permanent Writ of Restitution issue. The later judgment on fees and costs only confirmed what the prior order already stated and found. The eviction was therefore ordered and instituted prior to the bankruptcy petition and therefore cannot be a violation of the automatic stay regardless of when it was completed.

It is important to note here with the eviction and the lien that Jaycees' actions were not intended to affect the ownership of the Manufactured Home. Possession of the space after an eviction and the rights to lien the manufactured home are rights that belong to Jaycees. To the extent the Manufactured Home is determined to be part of the bankruptcy estate at all, which is questionable, the actions of perfecting a lien or even the act of enforcing a pre-petition permanent writ of possession does not directly change or affect the assets of the bankruptcy estate. The Manufactured Home either belongs to Susan Browne and is not part of the estate or it belongs to the estate. Either way, the Manufactured Home has not been altered or changed at all, and its value and positioning have not been altered. Jaycees rights to enforce the eviction already granted through a lockout does not affect any rights to own the home.

**5.    Conclusion**

Jaycees submits to the Court that the debtors' request for sanctions for violating the automatic stay should be denied. The lock-out was based on a pre-petition, state court order and

permanent writ of possession that remains enforceable and is not subject to the stay. The manufactured home is not titled in the Debtor's name since she voluntarily transferred title to the home from her name pre-petition. Further, the notice of lien served pursuant to NRS 108 does not violate the stay either because the notice is merely perfecting and/or maintaining a lien that was already in existence from the time that the manufactured home was initially on the lot.

The Court should deny the Debtor's request.

Dated this 27th of August 2025.

                              HUTCHISON & STEFFEN, LLC

                              */s/ Jeffrey R. Hall*
                      By: _____
                          John T. Steffen (4390)
                          Jeffrey R. Hall (9572)
                          Todd W. Prall (9154)
                          Peccole Professional Plaza
                          10080 Alta Drive No. 200
                          Las Vegas, Nevada 89145

                          *Attorneys for Las Vegas Jaycees*
                          *Senior Citizen Mobile Home Park*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 27th day of August, 2025, a copy of the following document entitled: ***JAYCEES SENIOR CITIZEN MOBILE HOME PARK'S EVIDENTIARY HEARING MEMORANDUM*** was served by Personally transmitting a copy of same via the Court's CM/ECF Internet system to their respective registered email site.

Gregory L. Wilde
Wilde & Associates
7473 W. Lake Mead Blvd., Suite 100
Las Vegas, NV 89128
greg@wildelawyers.com

*/s/ **Bobbie Benitez***

An employee of Hutchison & Steffen, PLLC