John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No.: 25-10340-nmc |
|---|---|
| URSULA LICHTENSTEIN, | Chapter 13 |
| Debtor. | **JAYCEES SENIOR CITIZEN MOBILE HOME PARK'S EVIDENTIARY HEARING CLOSING BRIEF** |

## 1.     Introduction

On September 4, 2025, the Court held an evidentiary hearing concerning Debtor Ursula Lichtenstein's ("Lichtenstein" or "Debtor") request for sanctions against Creditor Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees"). Lichtenstein claims that Jaycees violated the Automatic Stay under §362(a) by (i) calling and harassing her to seek payments from her during the bankruptcy; (ii) servicing notice of lien under NRS 108; and (iii) enforcement of a pre-petition state court permanent writ of possession and eviction. The evidence and law do not support Lichtenstein's claim.

## 2.     No evidence of harassment or efforts to get her to pay anything.

Despite having claimed in the moving papers that they had evidence of harassing phone calls, the evidence presented at the evidentiary hearing demonstrated very few calls from either Jaycees or its manager. Indeed, the call log demonstrated more calls from Lichtenstein to

1  Jaycees then the other way around. There is no evidence that Jaycees made any phone calls or
2  made any efforts to collect any debt or rent after the bankruptcy was filed. Jaycees' primary
3  concern was removing Lichtenstein from the mobile home community. Jaycees had no interest
4  in getting Lichtenstein to pay any further rent.

5  **3.      The Manufactured Home was not part of the bankruptcy estate.**

6  Lichtenstein claims that Jaycees' issuance of a notice of a lien or completion of the
7  eviction was a violation of the stay primarily because of their assertion that the manufactured
8  home that is the subject of the lien and is the subject of the eviction belongs to the bankruptcy
9  estate. However, the evidence presented shows that the manufactured home is not part of the
10 estate because Lichtenstein voluntarily transferred it out of her name in December 2024. Title
11 has been issued to Susan Browne and her boyfriend, Michael McKinnon, Jr. *See* Exhibits 8 & 10.

12 Jaycees is a non-profit entity that owns a mobile home community located at 505 West
13 Harmon Avenue, Las Vegas, Nevada 89103 (the "Park"). Lichtenstein is an evicted resident at
14 the Park who resided at the manufactured home that sits on Space #305 (the "Premises").
15 Lichtenstein and Susan Browne obtained title to the manufactured home located on the Premises
16 (the "Manufactured Home"). The original title to the Manufactured Home was issued to "Ursula
17 Lichtenstein or Susan Browne." *See* Exhibit 7, Bates-labeled CREDITOR032; Exhibit 8, Bates-
18 label CREDITOR034. During the evidentiary hearing Lichtenstein acknowledged that the use of
19 the word "or" in the issued certificate of title meant that either she or Ms. Browne could transfer
20 title. She also acknowledged, however, that she signed documents on December 21, 2024, to
21 transfer her interest in the Manufactured Home to Ms. Browne. *See* Exhibit 8, Bates-labeled
22 CREDITOR035. Because the home was voluntarily transferred out of Lichtenstein's name prior
23 to the bankruptcy petition by her own admission, it is not property of the bankruptcy estate and
24 any action taken against it cannot be considered a violation of the automatic stay.

25 Section 362(a) of the Bankruptcy Code provides that a petition for bankruptcy under any
26 of the applicable titles operates as a stay of "any act to create, perfect, or enforce a lien against
27 property of the estate." 11 U.S.C.A. § 362(a)(3). It also stays "enforcement, against the debtor

1  or against property of the estate, of a judgment obtained before the commencement of the case
2  under this title." *Id.* § 362(a)(2).

3  However, the stay only applies to property that belongs to the debtor estate at the time of
4  the alleged act. *In re Badea*, No. 2:15-BK-10638-GS, 2018 WL 4441731, at *5 (B.A.P. 9th Cir.
5  Sept. 17, 2018). Here, as stated above, Lichtenstein executed documents to transfer title of the
6  Manufactured Home to Susan Browne on December 21, 2024, and those documents were
7  submitted to the Manufactured Housing Division immediately thereafter. Further, title to the
8  Manufactured Home was issued on March 11, 2025, to Susan Browne and Charles McKinnon.
9  The debtor is no longer on title at all.

10  As noted previously, the only reason there can even be a colorable argument that such a
11  non-monetary eviction proceeding might violate the automatic stay is where the Manufactured
12  Home is owned by the estate. Here, the title has been issued in the name of a non-debtor. As
13  such, any acts against the Manufactured Home cannot have violated the automatic stay. Title of
14  manufactured homes in Nevada is governed by state law under Chapter 489 of the Nevada
15  Revised Statutes. Specifically, the Manufactured Housing Division has authority to regulate the
16  titling and transferring of title of manufactured homes in the state. *See* NRS 489.231(4); NRS
17  489.501-.585. Lichtenstein has not overcome the clear evidence, including her own admissions,
18  that the Manufactured Home was in fact voluntarily transferred. She cannot seek to bring
19  property back into the estate for the sole purpose of claiming an exemption when the property
20  was voluntarily transferred to begin with. *See* 11 USC § 522(g)(1)(A). Accordingly, any acts
21  that could even be considered to violate the stay were directed to the Manufactured Home,
22  including the notices filed pursuant to NRS 108 and the eviction and lockout. Given that the
23  Debtor did not have title to the Manufactured Home, these cannot be violations of the automatic
24  stay.
25  / / / /
26  / / / /
27

**4.      The eviction cannot be a violation of the automatic stay because it was based on a pre-petition writ of possession.**

Jaycees commenced an eviction action against debtor in or about March 2024 based on Debtor's actions in the Park that violated her lease agreement, the Park's rules and Chapter 118B of the Nevada Revised Statutes that governs leases in spaces in mobile home parks and manufactured communities.  *See* Exhibit 2.

On or about October 23, 2024, and then again on November 12, 2024, the Las Vegas Justice Court held a bench trial in the unlawful detainer matter.  On December 17, 2024, the justice court issued a minute order finding that Debtor was a nuisance in the Park as defined in NRS 118B.190(1)(b) and NRS 118B.200(1)(f) and specifically found that Debtor had exploited an older person in the Park by obtaining control of their money, assets and property and converting the same.  *See* Exhibit 3.

On January 3, 2025, the justice court entered formal Findings of Fact, Conclusions of Law, and Order in which the justice court ordered that a permanent writ of restitution should issue but should be stayed for five judicial days from the date it is issued.  *See* Exhibit 4.  In that order, the justice court found that "Plaintiff has established by a preponderance of the evidence all the elements for an unlawful detainer under NRS 118B.200 and is entitled to a Permanent Writ of Restitution of the premises." *Id.* at p. 8.  The justice court's order also provided that a Permanent Writ of Restitution would be entered and that the "decision on the costs shall not delay the issuance of the permanent writ." *Id.* at p. 9.  On January 8, 2025, the justice court issued a Permanent Writ of Restitution ordering that the Premises be restored to Jaycees.  Based on the order entered on January 3, 2025, and the Permanent Writ of Restitution being issued on January 8, 2025, there was a clear final order entered for eviction.  The only thing that remained was for a judgment to be entered on the costs pursuant to NRS 69.  Debtor's claim that there was no order for eviction prior to the petition is wrong.  Indeed, the judgment later entered for the purpose of quantifying Jaycee's claim in the bankruptcy only specifically stated that as part of the Findings of Fact and Conclusions of Law entered on January 3, 2025, the justice court

"ordered that a permanent writ of possession would issue." Indeed, the Judgment only further confirmed what the justice court had already ordered, "that the premises knowns as Space 305, 5805 West Harmon Avenue, Las Vegas, Nevada, presently occupied by defendant shall immediately be restored to plaintiff." *Id.* at 2.

The automatic stay does not apply to a pre-petition writ of permanent restitution. The Court has not determined that the automatic stay applies to the pre-petition order for eviction and the issued Permanent Writ of Restitution. Section 362 makes it clear the automatic stay does not operate to stay a permanent writ of restitution for unlawful detainer issued prior to the filing of the bankruptcy. 11 U.S.C. § 362(b)(22) provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
> 
> …
> 
> (22) subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

This only time that the stay might apply is under 11 U.S.C. § 362(l) which allows a debtor to certify that it will cure the bases for the unlawful detainer within a certain time period.

The Court should find that the automatic stay did not apply to Jaycees' eviction action pursuant to 11 U.S.C. § 362(b)(22) regardless of who holds title. This bankruptcy provision allows a eviction to go forward so long as the permanent writ of possession or writ of restitution was issued prior to filing the bankruptcy petition. The Ninth Circuit has found that, when an eviction order has been issued prior to a bankruptcy action, "at the time of the filing of the bankruptcy petition, [the debtor] had been completely divested of all legal and equitable possessory rights that would otherwise be protected by the automatic stay." *In re Perl*, 811 F.3d 1120, 1130 (9th Cir. 2016) ("[T]he prevailing party in the unlawful detainer proceeding under [California law] has better title than the evicted resident."). Like here, once a permanent writ of

1   restitution is entered, the state court has found the debtor has no legal possessory right in the
2   property. The permanent writ of possession was issued prior to the petition for bankruptcy. As
3   such the debtor could not be protected by the automatic stay.

4   Further, the unlawful detainer found by the Las Vegas Justice Court here is based on a
5   non-monetary and uncurable nuisance as specifically defined in Nevada Revised Statute
6   118B.200(1)(f). This is not a curable breach. Therefore, the exception set forth in 11 U.S.C. §
7   362(l) does not apply. The Debtor cannot submit any certification that the finding of an unlawful
8   detainer is curable. A nuisance, especially the one at issue in this case, cannot be cured and
9   Jaycees is entitled to obtain possession of the Premises. The automatic stay does not apply to
10  such an eviction, and the enforcement of the Permanent Writ of Possession cannot be a violation
11  of the automatic stay.

12  Debtor has claimed that Jaycees filing of a motion seeking to lift the stay is an admission
13  that the stay would be violated were Jaycees to complete an eviction. This was not an admission,
14  but rather a request for a comfort order because in counsel's experience, constables will not
15  effectuate an eviction without a lift stay order where a bankruptcy has been filed. However, as
16  noted during the evidentiary hearing, the Court did not state in its decision granting the request to
17  lift the stay whether the lifting the stay was required. The Court entered an order on the motion
18  on May 12, 2025, that found that "to the extent the [automatic] stay might apply, cause exists to
19  lift the automatic stay . . . for the purpose of executing on the Permanent Writ of Possession
20  [Restitution] issued by the Las Vegas Justice Court in Case No. 24C008342." (Doc. 70). The
21  Court's language suggests, as Jaycees has argued, that the automatic stay does not apply to the
22  pre-petition order granting eviction and Permanent Writ of Restitution pursuant to 11 U.S.C. §
23  362(b)(22). At the very least, the Court did not determine whether the automatic stay applied or
24  not. Jaycees contends, based on the argument herein, that it did not.

25  **5.    The completed lockout did not violate the automatic stay.**

26  Although the Court informed the parties that it would grant Jaycees motion in February
27  2025, the actual order was not entered until May 12, 2025. In the meantime, Debtor remained in

1  the home for months despite having been found to have committed acts against other residents
2  constituting elder abuse. Although Jaycees had a writ of possession, in an abundance of caution,
3  it had waited to get the order confirming the stay was inapplicable before proceeding with an
4  eviction. During that same time, Debtor, who had been charged criminally for elder abuse, was
5  arrested on or around April 11, 2025, for violations of the no-contact orders in the criminal court.
6  The Manufactured Home was therefore unoccupied, and Jaycees did not know whether the
7  Debtor would ever return to the home or who was controlling access to the home. During this
8  time, a licensed dealer had placed a lock on the home at the request of Susan Browne, not the
9  Debtor, and had informed Jaycees that she was the owner of the home and would be looking to
10 sell it.

11 On or about April 16, 2025, while Debtor was incarcerated, Jaycees did complete a lock-
12 out based on the pre-petition state court order and Permanent Writ of Restitution and secured the
13 space and the Manufactured Home. Jaycees did remove a lock placed there by the licensed
14 dealer representing Susan Browne, a lock that did not belong to the Debtor. Ultimately, when
15 the Debtor was released from jail after agreeing to a plea deal on or about April 23, 2025, at 4:30
16 in the morning, Jaycees let the Debtor back into the home for a brief period of time to arrange to
17 move her things so she would have a place to stay. In late May 2005, Jaycees again changed the
18 locks when Debtor vacated the Manufactured Home but failed to surrender the keys. Debtor has
19 not returned to the Manufactured Home since that time except to remove certain property. As
20 explained above, enforcing the pre-petition writ was not a violation of the stay.

21 Further, Jaycees actions to secure the Manufactured Home and then letting the Debtor
22 back in were taken in good faith. Debtor alleged that Jaycees improperly took things from the
23 Manufactured Home or broke the seal that was placed on the Manufactured Homes after the
24 lock-out but never produced sufficient evidence to prove these allegations. Jaycees absolutely
25 denies this allegation. Debtor had no evidence that any Jaycees representative did anything
26 improper and no evidence that the seal was actually broken before she entered the home. Most
27

1 importantly, Debtor provided no evidence or even an allegation that any of her personal property
2 was disturbed in any matter after Jaycees secured the Manufactured Home.

### 6.   Perfecting NRS 108 lien does not violate the automatic stay.

Because storage rent continues to be owed for the time that the Manufactured Home continues to be in the Park from the time that the Permanent Writ of Restitution was issued through to today, Jaycees did direct the service of a notice of lien that would perfect and maintain its lien rights during the bankruptcy. The notice of lien document is a mandated form required by the Manufactured Housing Division and its language cannot be changed. The Notice of Lien is not a violation of the automatic stay because such liens are an exception under § 362(b)(3) and § 546(b) of the Bankruptcy Code.

The filing of a petition stays "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." *Id.* § 362(a)(2). Section 362(a) of the Bankruptcy Code provides that a petition for bankruptcy under any of the applicable titles operates as a stay of "any act to create, perfect, or enforce a lien against property of the estate." 11 U.S.C.A. § 362(a)(3).

However, the petition for bankruptcy does not act as a stay as to any act under subsection (a) "to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." 11 U.S.C.A. § 362(b)(3).

Section 546(b) of the Bankruptcy Code sets forth limits to the trustee's power and specifically states that those powers are "subject to any generally applicable law that-- (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C.A. § 546(b)(1).

1    The Ninth Circuit Bankruptcy Appellate Panel has found that mechanics' lien law in Nevada, which is another lien statute under Chapter 108 of the Nevada Revised Statutes "is a 'generally applicable law' falling within § 546(b)." *In re Badea*, No. 2:15-BK-10638-GS, 2018 WL 4441731, at *4 (B.A.P. 9th Cir. Sept. 17, 2018).

Nevada's lien statutes applicable to mobile home parks are akin to mechanic's liens in that the lien is created by virtue of the relationship of the owner of the land with the owner of the manufactured home that sits upon its land. Nevada statutes provide that "A person engaged in the business of . . . [k]eeping a mobile home park . . and who in connection therewith stores, maintains, keeps or repairs any . . . mobile home or manufactured home . . . at the request or with the consent of the owner or the owner's representatives . . . *has a lien upon* the . . . mobile home or manufactured home or any part or parts thereof for the sum due for the . . . storing, maintaining, [or] keeping the . . . mobile home or manufactured home . . . and for all costs incurred in enforcing such a lien." NRS 108.270(1) (emphasis added).

Other provisions of the statutory scheme provide the procedures for perfection or maintaining the lien, including the timing and notice requirements. For example, with respect to liens for rent of a space upon which the mobile home or manufactured home sits, the procedure requires certain notices to be made within certain time periods that must be met to eventually enforce the lien. *See, e.g.,* NRS 108.272 (providing information about who should be notified of the lien); NRS 108.315 (setting forth the timing of when notices for rent should be sent in order to preserve and/or maintain the lien). The notices sent in this case were sent pursuant to the requirements of NRS 108.315 that provide the required notices that must be sent in order to maintain and perfect the lien.

Here, Jaycees sent the notice required by NRS 108.315 to maintain or perfect a lien that was already created and therefore exempt from the automatic stay. Even if it was done prematurely here, it is still not a violation of the automatic stay. The language of the notice is mandated by the Manufactured Housing Division and cannot be changed. Jaycees was not

intending to collect on a debt by using the mandatory language but rather sought to maintain its NRS 108 lien.

**5.    Conclusion**

Jaycees submits to the Court that the debtors' request for sanctions for violating the automatic stay should be denied.  The lock-out was based on a pre-petition, state court order and permanent writ of possession that remains enforceable and is not subject to the stay.  The Manufactured Home is not titled in the Debtor's name since she voluntarily transferred title to the home from her name pre-petition.  Further, the notice of lien served pursuant to NRS 108 does not violate the stay either because the notice is merely perfecting and/or maintaining a lien that was already in existence from the time that the Manufactured Home was initially on the lot.

The Court should deny the Debtor's request.

Dated this 21st of October 2025.

HUTCHISON & STEFFEN, LLC

*/s/ Jeffrey R. Hall*
By: _____
   John T. Steffen (4390)
   Jeffrey R. Hall (9572)
   Todd W. Prall (9154)
   Peccole Professional Plaza
   10080 Alta Drive No. 200
   Las Vegas, Nevada 89145

   *Attorneys for Las Vegas Jaycees*
   *Senior Citizen Mobile Home Park*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 21st day of October, 2025, a copy of the following document entitled: ***JAYCEES SENIOR CITIZEN MOBILE HOME PARK'S EVIDENTIARY HEARING CLOSING BRIEF*** was served by Personally transmitting a copy of same via the Court's CM/ECF Internet system to their respective registered email site.

Gregory L. Wilde
Wilde & Associates
7473 W. Lake Mead Blvd., Suite 100
Las Vegas, NV 89128
greg@wildelawyers.com

*/s/ Bobbie Benitez*

An employee of Hutchison & Steffen, PLLC