Honorable Natalie M. Cox
United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

* * * * *

| | |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>Debtor. | Chapter 13<br><br>Case No.: 25-10340-NMC |

**ORDER GRANTING IN PART DEBTOR'S MOTIONS FOR DAMAGES AND CONTEMPT**

Debtor Ursula Lichtenstein seeks damages and sanctions against Las Vegas Jaycees Senior Citizen Mobile Home Park (Jaycees) for alleged violations of the automatic stay. The Court held an evidentiary hearing, considered the testimony and exhibits, and reviewed the parties' arguments. For the reasons below, the Court grants relief in part and denies relief in part. (ECF Nos. 32, 76).[1]

---

[1] All references to "ECF No." are to the numbers assigned to the documents filed in the above-captioned underlying bankruptcy proceeding and bankruptcy cases as they appear on the docket maintained by the Clerk of the Court

## BACKGROUND

Debtor lived in a manufactured home on Space 305 in Jaycees' mobile home park. She leased the lot from Jaycees. The parties' agreement also included storage of the home. The lot and the home are separate property interests. (Jaycees Ex. 1; Debtor Ex. E).

Jaycees brought an unlawful-detainer action in Las Vegas Justice Court, Case No. 24C008342. (Jaycees Ex. 2). After trial, the Justice Court issued a December 17, 2024, minute order finding that Jaycees had established unlawful detainer and was entitled to a permanent writ of restitution. The minute order stayed enforcement for five judicial days following written entry of the order. (Jaycees Ex. 3).

The Justice Court entered findings of fact and conclusions of law on January 2, 2025. (Jaycees Ex. 4). A Permanent Writ of Restitution signed on January 8, 2025, was filed on January 13, 2025.[2] The writ directed that possession of the premises be restored to Jaycees and stayed enforcement for five judicial days from entry. (Jaycees Ex. 5). Debtor filed this chapter 13 case on January 21, 2025. (ECF No. 1).

On January 27, 2025, Jaycees moved for an order finding that the automatic stay did not prevent eviction or, alternatively, granting relief from the stay. (ECF No. 8). Debtor opposed the motion, arguing that the writ concerned possession of the lot and did not authorize interference with the manufactured home. (ECF No. 25).

On February 18, 2025, the Court held a hearing on Jaycees emergency motion for relief from stay. (ECF No. 8). The Court announced that it would grant limited eviction relief to

---

[2] The parties' papers refer to a "Permanent Writ of Possession." (ECF No. 8 at 1; ECF No. 13 at 1). The Justice Court's writ is titled "Permanent Writ of Restitution." (Jaycees Ex. 5). The Court uses that title except when quoting a document that uses different wording.

effectuate the state-court eviction and directed the parties to prepare an order. The parties disputed the wording. The written order was entered on May 12, 2025. (Feb. 18, 2025, hearing; ECF Nos. 28, 48, 70).

The written order confirmed that cause under § 362(d)(1) existed, "to the extent the stay might apply," "solely for the purpose of executing on the Permanent Writ of Possession issued by the Las Vegas Justice Court in Case No. 24C008342." (ECF No. 70 at 2). It allowed Jaycees to remove Debtor from the lot and secure the home, while preserving Debtor's access so the home could be sold. The order did not decide ownership of the home or broadly authorize liens and collection activity. (ECF No. 70 at 1–2).

Ownership of the manufactured home remains disputed and is the subject of Adversary Proceeding No. 25-01110. The title documents and the parties' accounts differ concerning Debtor's interest in the home and the transfers to Susan Browne and Charles McKinnon. The adversary proceeding remains unresolved. (Jaycees Exs. 8–10; Adv. No. 25-01110, ECF Nos. 2, 8, 20).

Debtor's first motion for contempt challenges post-petition liens and alleged collection activity. (ECF No. 32). Her second motion for contempt challenges an April 2025, lockout and restrictions on access to the manufactured home and belongings inside. (ECF No. 76). Jaycees maintain that it acted appropriately to enforce the eviction, secure the home, and preserve its statutory lien rights for rent and storage charges. Robert Deken ("Deken"), Jaycees' park manager, submitted a declaration describing those actions. (Deken Decl. ¶¶ 17–34).

## LEGAL STANDARD

The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. These motions concern enforcement of the automatic stay and are core matters under § 157(b)(2)(A) and (G).

### A. The automatic stay

A bankruptcy petition immediately imposes the automatic stay. In re Minoco Group of Cos., Ltd., 799 F.2d 517, 520 (9th Cir. 1986). The stay generally prohibits continuation of prepetition proceedings against a debtor, enforcement of prepetition judgments against the debtor or estate property, acts to obtain possession of or exercise control over estate property, certain lien activity, and collection of prepetition debts. 11 U.S.C. § 362(a)(1)-(6). These provisions protect different interests, and their application depends on the particular conduct challenged.

Estate property includes the debtor's legal and equitable interests when the case begins. 11 U.S.C. § 541(a)(1). State law generally determines the nature and extent of those interests. Eden Place, LLC v. Perl (In re Perl), 811 F.3d 1120, 1127–28 (9th Cir. 2016). Although a possessory interest may receive protection, continued physical occupancy does not necessarily establish a protected interest after entry of an unlawful-detainer judgment and issuance of a writ. The Court must determine the effect of those proceedings under applicable state law. Id. at 1128–30.

The stay is subject to statutory exceptions, including § 362(b)(22), which is subject to § 362(l), and excepts from § 362(a)(3) the continuation of qualifying residential eviction proceedings when the lessor obtained a judgment for possession before the petition date. Its application requires consideration of the parties' relationship, the debtor's rights under state law, and the operative state-court orders on the petition date. LoCali Mgmt. Group, LLC v. Rodriguez (In re Rodriguez), No. CC-25-1130-CNL, 2026 WL 2014307, at *6–8 (B.A.P. 9th Cir. July 10, 2026). The exception does not independently authorize unrelated lien enforcement or collection of a prepetition monetary obligation.

A bankruptcy court may terminate, annul, modify, or condition the stay under § 362(d). The terms of an order granting limited stay relief are strictly construed. In re Wardrobe, 559 F.3d 932, 935–37 (9th Cir. 2009).

**B. Damages under § 362(k)**

Section 362(k)(1) requires an award of proven actual damages, including reasonable attorney fees and costs, to an individual injured by a willful violation of the automatic stay. Debtor must prove the violation and resulting damages by a preponderance of the evidence. In re Roman, 283 B.R. 1, 7–9 (B.A.P. 9th Cir. 2002).

A violation is willful if the creditor knew of the bankruptcy and intentionally took the action that violated the stay. In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989). Debtor need not prove a specific intent to violate the law. A good-faith belief that the conduct was permitted does not defeat statutory willfulness. Id.

Reasonable attorney fees incurred responding to a willful stay violation and pursuing damages are recoverable under § 362(k), even without another compensable injury. In re Schwartz-Tallard, 803 F.3d 1095, 1099–1101 (9th Cir. 2015) (en banc); In re Pearlman, 2026 WL 1791719, at *7–8 (B.A.P. 9th Cir. June 22, 2026).

Emotional-distress damages require significant harm, clear evidence establishing that harm, and a causal connection between the harm and the stay violation. Medical evidence is not always required; corroborating testimony or the circumstances surrounding the violation may establish significant emotional harm. Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149–50 (9th Cir. 2004), abrogated on other grounds as recognized by In re Gugliuzza,

852 F.3d 884 (9th Cir. 2017); see also Hunsaker v. United States, 902 F.3d 963, 966, 968 (9th Cir. 2018) (recognizing emotional-distress damages as recoverable actual damages under § 362(k)).

Punitive damages are discretionary and require more than a willful violation. They may be awarded when the creditor acts with reckless or callous disregard for the law or the debtor's rights. Bloom, 875 F.2d at 228.

**C. Civil contempt under § 105(a)**

Civil Contempt under § 105(a) requires clear and convincing evidence of a violation of a specific and definite court command. The automatic stay itself qualifies as such a command. In re Dyer, 322 F.3d 1178, 1190–91 (9th Cir. 2003).

Under Taggart v. Lorenzen, civil contempt is inappropriate when there is a fair ground of doubt whether the challenged conduct was prohibited. 587 U.S. 554, 561–65 (2019). The inquiry is objective: subjective good faith does not excuse contempt, but an objectively reasonable basis for doubt may preclude it. Id. The Bankruptcy Appellate Panel has assumed without deciding that Taggart's standard applies to contempt for violating the automatic stay. In re Jeong, 2020 WL 1277575, at *4 & n.3 (B.A.P. 9th Cir. Mar. 16, 2020) (unpublished). That separate contempt inquiry does not replace the statutory willfulness standard governing damages under § 362(k).

Civil-contempt sanctions serve compensatory or coercive purposes. Section 105(a) does not authorize significant punitive sanctions for a stay violation. Dyer, 322 F.3d at 1192–95.

## ANALYSIS

Debtor asserts five violations of the automatic stay: (1) the February 18, 2025, lien notice demanding payment and threatening sale of the manufactured home; (2) the later lien notice

seeking additional rent, storage charges, and lien costs; (3) the April 2025 lockout; (4) alleged collection communications and harassment; and (5) later restrictions on access to the home and belongings inside. (ECF Nos. 32, 76).

Jaycees opposes Debtor's claims by responding that: (1) the home was not estate property because Debtor transferred it before bankruptcy; (2) the lien notices were permitted steps to preserve existing statutory lien rights under §§ 362(b)(3) and 546(b), even if the first notice was premature; (3) the prepetition eviction judgment and writ permitted the April lockout under § 362(b)(22) and Perl; (4) Debtor did not substantiate her allegations of collection demands or harassment; and (5) Jaycees secured the home while allowing access, and Debtor did not prove that it improperly withheld belongings or denied permitted access. (ECF No. 45 at 5–11; ECF No. 110 at 4–10; Deken Decl. ¶¶ 28–31).

The Court addresses each alleged violation below.

**A. The February 18, 2025, lien notice demanding payment and threatening sale of the manufactured home violated the automatic stay under Section 362(a)(6)**

The Court finds that the February notice willfully violated § 362(a)(6). It sought payment from Debtor of an asserted prepetition debt, and neither the Court's limited stay relief nor the lien-perfection exception permitted that demand.

*1. The notice sought payment from Debtor without authorization from this Court*

Section 362(a)(6) prohibits acts to collect, assess, or recover a prepetition claim against Debtor. Whether a communication seeks collection depends on its content and context. In re Zotow, 432 B.R. 252, 258–60 (B.A.P. 9th Cir. 2010).

The February 18, 2025, notice was addressed to "Ursula Lichtenstein or Susan Browne" and demanded $1,493.72 for storage charges and lien costs. (ECF No. 32 at 26). It stated that $1,380.00 in storage charges became due on January 1, 2025, before Debtor filed bankruptcy on January 21, 2025. (ECF No. 32 at 26; ECF No. 1). The notice described $1,493.72 as "currently due," required payment on or before May 30, 2025, and warned that the home would be sold at auction unless payment was made. (ECF No. 32 at 26–27). The notice was notarized and Deken signed the notice on February 18, 2025, the same day the Court heard Jaycees' emergency motion for relief from stay. (ECF No. 32 at 27; Feb. 18, 2025, hearing).

Jaycees sought relief from the automatic stay to carry out the state-court eviction, not to collect payment or enforce a lien against the manufactured home. (ECF No. 8; Feb. 18, 2025, hearing). At the hearing, Jaycees' counsel mentioned possible lien rights but expressly stated that they were not before the Court. (Feb. 18, 2025, hearing). The Court did not authorize collection or lien enforcement, determine the amount owed, or approve increased storage charges. Id. Even if the February 18 oral ruling had been final and immediately enforceable, the relief granted would not have permitted the February notice's demand for payment and threatened sale.

Rule 4001 provides a separate reason the oral ruling did not permit immediate action. Unless the Court orders otherwise, Rule 4001(a)(4) stays an order granting relief from the automatic stay for 14 days after entry. That period runs from entry of the written order, not the oral announcement. The Court did not waive the waiting period at the February 18 hearing. (Feb. 18, 2025, hearing). Thus, even assuming the oral ruling was a final grant of stay relief, Jaycees could not rely on it to justify the lien notice issued that same day. See In re Kim, 554 B.R. 304, 312–13 & n.7 (Bankr. D. Mass. 2016) (applying former Rule 4001(a)(3), now Rule 4001(a)(4)). Once the waiting period expired, Jaycees could undertake only the actions authorized by the relief granted—

Debtors eviction pursuant to the Permanent Writ of Restitution. Expiration of the waiting period under Rule 4001(a)(4) would not expand eviction relief to include collection or lien enforcement.

The parties separately stipulated to allow Jaycees to return to the Justice Court to determine fees and costs and obtain a monetary judgment supporting its proof of claim. (ECF No. 26 at 3, ¶¶ 2–4; ECF No. 29). The stipulation did not authorize collection outside bankruptcy or the creation or enforcement of a lien against the home. Id. An order granting limited stay relief is strictly construed. In re Wardrobe, 559 F.3d 932, 935–37 (9th Cir. 2009). The lien language in the later state-court monetary judgment did not expand the limited relief this Court approved. (Jaycees Ex. 6; ECF Nos. 26, 29).

*2. The lien-perfection exception did not permit the February notice's demand for payment*

Jaycees argues that §§ 362(b)(3) and 546(b) permitted the notice as a step to preserve statutory lien rights against the home. (ECF No. 45 at 7–10; ECF No. 110 at 8–10). Read together, those provisions permit certain acts to perfect an interest or maintain its perfection when applicable law makes those acts effective against an intervening interest. See In re Glasply Marine Indus., Inc., 971 F.2d 391, 394 (9th Cir. 1992). They do not generally authorize enforcement of a lien. In re Hunters Run Ltd. P'ship, 875 F.2d 1425, 1428 (9th Cir. 1989).

Under NRS 108.270(1), a qualifying mobile-home-park operator has a lien for covered charges that are owed, subject to NRS 108.315. The required notice must itemize those charges, state when they became due, demand payment, and warn of a sale if payment is not made. NRS 108.272(3)(a), (c)–(d). A demand for payment and a warning of sale are therefore required parts of the statutory notice; their inclusion alone does not establish a stay violation.

Here, however, the charges underlying the notice do not support Jaycees' lien-perfection argument. Paragraph B of the storage addendum makes increased storage charges effective when a resident moves out or is evicted from the community. (Jaycees Ex. 1, storage addendum ¶ B). Read in context, those charges apply when the resident no longer lives there but the home remains on the lot for storage. Id. They do not become due merely because an unlawful-detainer judgment is entered, a writ of restitution is issued, or title is transferred. Id.

Debtor still occupied the home when the February notice was issued, so the event triggering the increased charges had not occurred. (Debtor Decl. ¶¶ 19–25; Deken Decl. ¶¶ 24–27, 31). Counsel's statements at the February hearing support that interpretation: counsel described increased charges associated with nonoccupancy and acknowledged that the amount remained to be discussed. (Feb. 18, 2025, hearing).

The account records also showed that Debtor had paid base rent for January through March 2025, and Deken acknowledged those payments. (Debtor Ex. E; Deken Decl. ¶ 17). Jaycees admitted that the February lien notice failed to account for the prepaid rent and offered to rescind it and issue a corrected notice. (ECF No. 45 at 6).

Jaycees has not shown that the storage charges supporting its demand were owed. Sections 362(b)(3) and 546(b) protect qualifying existing rights but those sections do not support creation of a lien for charges that were not owed. Using the statutory notice form does not, by itself, bring the demand within the lien-perfection exception.

The finding of a violation rests on more than an incorrect balance or the notice's required language. The notice demanded payment from Debtor of charges represented as due before bankruptcy, included increased storage charges that had not become due, failed to account for

prepaid base rent, and threatened sale of the home unless payment was made. (Debtor Exs. D, E; Jaycees Ex. 1, storage addendum ¶ B; ECF No. 45 at 6). Considering the notice's content and these circumstances, the Court finds that it pressured Debtor to pay an asserted prepetition debt outside bankruptcy and therefore violated § 362(a)(6). See Zotow, 432 B.R. at 258–60.

Here, the finding of a violation under § 362(a)(6) concerns collection from Debtor personally. Section 362(a)(6) protects her from collection of a prepetition claim regardless of whether the home was property of the estate. The Court therefore need not decide ownership to find this violation.

#### 3. *The violation was willful*

A violation is willful when the creditor knows of the bankruptcy and intentionally takes the action that violates the stay. In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989). Specific intent to violate the law is unnecessary, and a good-faith belief that the action was permitted does not defeat statutory willfulness. Id.

Jaycees knew about the bankruptcy and intentionally issued the lien notice, which identified Debtor's bankruptcy case. (Debtor Ex. D). The violation was therefore willful. Jaycees' offer to rescind the notice does not undo the stay violation.

### B. The Debtor did not establish a stay violation based on the later lien notice

The Court denies relief based on the later lien notice because Debtor did not prove that Jaycees filed, delivered, or otherwise used it to collect payment or assert a lien.

The notice demanded $2,678.08 for rent, storage charges, and lien costs and named Susan Browne and Charles Michael McKinnon Jr. as the owners responsible for payment. (Debtor Ex. K at 1). The copy admitted as Debtor's Exhibit K is unsigned, and its notarial section is blank. (Debtor Ex. K at 2).

Jaycees generally stated that the "notices sent in this case" complied with NRS 108.315, but that statement does not identify whether or when this particular notice was filed or delivered. (ECF No. 110 at 9). Neither party supplied a signed and notarized copy or other proof establishing that Jaycees filed, delivered, or used this notice. (Debtor Ex. K; ECF No. 110 at 8–10).

The absence of a signature or notarization does not, by itself, prove that no notice was sent to the Debtor. However, after considering the exhibit, the testimony, and Jaycees' general statement, the Court finds that Debtor did not prove by a preponderance of the evidence that Jaycees filed or delivered the later notice or otherwise used it to collect payment or assert a lien. See Roman, 283 B.R. at 7–9. Without proof that Jaycees took any of those steps, Debtor has not established a stay violation based on this notice. The Court therefore denies relief without deciding who owned the home or whether the asserted lien qualified for an exception to the stay.

**C. The April 2025 lockout did not violate the automatic stay**

The April lockout did not violate the automatic stay. Although the eviction exception did not apply when Debtor filed bankruptcy, the stay later terminated under § 362(e)(2), before the lockout occurred.

*1. The eviction exception did not apply when bankruptcy began*

A bankruptcy petition immediately imposes the automatic stay. In re Minoco Group of Cos., Ltd., 799 F.2d 517, 520 (9th Cir. 1986). Among other protections, the stay generally prohibits

continuation of prepetition proceedings against a debtor and enforcement of prepetition judgments against the debtor or estate property. 11 U.S.C. § 362(a)(1)–(2).

Jaycees argues that § 362(b)(22) permitted eviction because it obtained an unlawful-detainer judgment and writ before bankruptcy. (ECF No. 110 at 4–6). Subject to § 362(l), that provision excepts from § 362(a)(3) the continuation of qualifying residential eviction proceedings when the lessor obtained a judgment for possession before the petition date. Its application requires consideration of the state-court orders in effect when bankruptcy began. LoCali Mgmt. Group, LLC v. Rodriguez (In re Rodriguez), No. CC-25-1130-CNL, 2026 WL 2014307, at *6–8 (B.A.P. 9th Cir. July 10, 2026).

In Rodriguez, a state-court stay prevented enforcement of the eviction pending a ruling on a motion to vacate. The Panel held that § 362(b)(22) did not permit eviction while that stay remained in effect on the petition date. Id. at 7–8. Here, the Permanent Writ of Restitution imposed a fixed five-judicial-day stay. (Jaycees Ex. 5 at 2). Although the stays differed, each prevented enforcement of the eviction when the debtor filed bankruptcy.

The Permanent Writ of Restitution expressly provides that it "is stayed for five judicial days from the date this order is entered with the Court." (Jaycees Ex. 5 at 2). Excluding the January 13, 2025, entry date, weekends, and the January 20 Martin Luther King Jr. Day holiday, the fifth judicial day was January 21, 2025—the day Debtor filed bankruptcy. (ECF No. 1; Jaycees Ex. 5). The Permanent Writ of Restitution therefore remained unenforceable when the case began, and § 362(b)(22) did not permit eviction on the petition date. The later expiration of the state-court stay did not, by itself, terminate the bankruptcy stay.

2. *The stay terminated before the April lockout*

Debtor argues that this Court did not authorize eviction before entry of the May 12, 2025, written order. (ECF No. 111 at 11–12). The absence of a written order does not resolve whether the stay terminated by operation of § 362(e)(2).

In an individual's chapter 7, 11, or 13 case, § 362(e)(2) provides that the stay terminates 60 days after a party requests relief under § 362(d), unless the Court renders a final decision within that period or the period is extended by agreement of all parties in interest or by the Court for a specified period upon findings of good cause. Jaycees filed its motion on January 27, 2025, making March 28, 2025, the end of that 60-day period. (ECF No. 8). The question is whether the Court's February 18, 2025, oral ruling was a final decision within that period.

An oral ruling may bind the parties before a written order is entered. In Noli v. Commissioner, the parties knew the oral stay-relief order's terms and suffered no prejudice from the absence of a separate judgment. 860 F.2d 1521, 1525 (9th Cir. 1988). Sewell likewise recognized that an oral ruling can be effective in appropriate circumstances, while explaining the general rule that orders become effective when written and docketed. In re Sewell, 345 B.R. 174, 180–81 (B.A.P. 9th Cir. 2006).

At the February 18, 2025, hearing, the Court announced that it would grant limited eviction relief and directed the parties to prepare language incorporating protections for Debtor's access to the home. Debtor's access to the home was a material condition of the stay relief. The Court announced that it would allow the eviction and generally agreed with Debtor's requested protections. But it did not settle all the details. Instead, it directed counsel to agree on the terms and offered another hearing if they could not. (Feb. 18, 2025, hearing).

The parties could not agree on whether Debtor could personally enter the home to show and sell it or whether only her representatives could enter. (ECF No. 28 at 2, 9; ECF No. 48 at 2–3). That dispute concerned what the order would allow, not simply how to word it. In Noli, the parties understood and accepted the oral order as final. 860 F.2d at 1525. Here, an important condition still required agreement or another ruling. The February 18 ruling therefore was not a final decision under § 362(e)(2)(A).

Jaycees' decision to let Debtor back into the home on April 23 does not show that the access dispute had been resolved before March 28. (ECF No. 104 at 7; Campos Decl. ¶¶ 7–10).

The Court did not render a final decision within 60 days, and neither the parties nor the Court extended that deadline. The stay therefore terminated on March 28, 2025, under § 362(e)(2), as to Jaycees' enforcement of the Permanent Writ of Restitution.

Rule 4001(a)(4) generally requires a creditor to wait 14 days after entry of a stay-relief order before enforcing it. That waiting period did not extend the deadline under § 362(e)(2) or restore the stay after it had terminated.[3]

Because the April lockout occurred after the stay terminated as to enforcement of the writ, it did not violate the automatic stay. (Campos Decl. ¶¶ 5–6; Deken Decl. ¶ 27). Debtor's requests for damages and contempt sanctions based on that lockout are denied.

[3] If the stay had remained in effect until the May 12, 2025, written order, Jaycees would have had to wait until May 28 to enforce it. The fourteenth day fell on May 26, Memorial Day, so the waiting period continued through May 27. Fed. R. Bankr. P. 9006(a)(1)(C), (a)(6)(A). An oral ruling does not eliminate that waiting period unless the court orders otherwise. See In re Kim, 554 B.R. 304, 312–13 & n.7 (Bankr. D. Mass. 2016). Kim did not address termination under § 362(e)(2), which is the basis for the Court's ruling here.

**D. Alleged collection communications and harassment**

Debtor alleges that Deken told her she could remain in the park if she paid but would not specify an amount. She also alleges that he said he could "pick this place up cheap" and that she would need to conduct a "fire sale." (ECF No. 32 at 4). She argues that those communications pressured her to pay and violated the stay. (ECF No. 32 at 5).

Section 362(a)(6) prohibits collection of a prepetition claim against Debtor. The Court considers the content and context of the communications, and Debtor bears the burden of proving the claimed violation by a preponderance of the evidence. Zotow, 432 B.R. at 258–60; Roman, 283 B.R. at 7–9.

Jaycees denied that Deken demanded payment or made the alleged comments about acquiring the home cheaply. It maintained that Debtor initiated communications seeking permission to remain in the park. (ECF No. 45 at 5, 11). Debtor and Deken gave conflicting accounts, and Deken testified that his calls responded to hers. (Debtor Decl. ¶¶ 10–16; Deken Decl. ¶¶ 30–31).

The telephone records establish that communications occurred but do not establish their disputed content. (Debtor Ex. S). After weighing the testimony and surrounding evidence, the Court finds that Debtor did not prove that Deken more likely than not demanded payment of a prepetition debt or used discussions about occupancy, sale, or access to pressure her to pay. The Court therefore denies relief based on these communications. This finding rests on the weight of the evidence.

**E. Later restrictions on access to the home and belongings inside**

Debtor challenges restrictions on entering the home and retrieving belongings. (ECF No. 76). Her argument that the April lockout itself was premature is addressed above. The separate question is whether Jaycees later denied access preserved by the May 12, 2025, order. (ECF No. 70 at 1–2).

The May 12, 2025, order allowed Jaycees to remove Debtor and secure the home while preserving access to facilitate a sale. (ECF No. 70 at 1–2). It did not authorize Debtor to resume living there or require unrestricted entry. Id.

Jaycees allowed Debtor back into the home after the April lockout and before the May order. (Campos Decl. ¶¶ 7–10; ECF No. 104 at 7). Debtor also described a supervised visit to retrieve belongings. (Debtor Decl. ¶ 29). Deken testified that reasonable access remained available and that Jaycees would cooperate with a licensed dealer marketing the home. (Deken Decl. ¶¶ 28–29).

A notice dated May 28, 2025, asserted that the home belonged to Jaycees, prohibited unauthorized entry and removal of belongings, threatened prosecution for trespass, and provided contact information to request access. (Debtor Ex. N). The Court did not award Jaycees ownership and does not adopt the notice's assertion of ownership. (ECF No. 70; Debtor Ex. N).

The notice restricted entry but provided a means to request access; it does not establish that Jaycees refused access to show or sell the home or retrieve requested belongings. (Debtor Ex. N). After weighing the testimony and exhibits, the Court finds that Debtor did not prove that Jaycees refused a request for such access. (Debtor Decl. ¶ 29; Deken Decl. ¶¶ 28–29).

The Court therefore denies relief based on the alleged denial of access. This ruling does not determine ownership of the home or expand Jaycees' authority under the May 12, 2025, order.

### F. Damages for the February notice

#### *1. Emotional distress and other expenses*

Section 362(k)(1) requires an award of proven actual damages to an individual injured by a willful stay violation. Emotional-distress damages are recoverable, but Debtor must establish significant harm, clear evidence of that harm, and a causal connection to the violation. Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149–50 (9th Cir. 2004), abrogated on other grounds as recognized by In re Gugliuzza, 852 F.3d 884 (9th Cir. 2017). Medical evidence is not always required; corroborating testimony and the circumstances may establish the harm. Dawson, 390 F.3d at 1149–50; see also Hunsaker v. United States, 902 F.3d 963, 966, 968 (9th Cir. 2018).

Debtor described anxiety, sleeplessness, crying, and fear of losing the home after receiving the February notice. (Debtor Decl. ¶¶ 19). Neressa Dobroski, Debtor's longtime friend and former neighbor at Jaycees, visited immediately after Debtor received the notice and observed that she was crying and frightened about losing her home. (Dobroski Decl. ¶¶ 1, 3–4, 6). Dobroski also described continuing anxiety and a change in Debtor's demeanor following the notice. (Dobroski Decl. ¶ 6).

The Court finds significant emotional harm caused by the February notice. Its threatened sale of the home where Debtor lived, her account of her reaction, and Dobroski's immediate and continuing observations clearly establish the harm and its connection to the notice. (Debtor Ex. D; Debtor Decl. ¶¶ 19–25; Dobroski Decl. ¶ 6).

The August 4, 2025, therapy letter confirms that Debtor began treatment in September 2024 for major depressive disorder and continued treatment before and after the challenged conduct.

(Debtor Ex. Q). It does not connect particular symptoms or treatment expenses to the notice. Id. The Court does not infer that connection from the letter. Rather, it relies on the testimony and circumstances to find additional distress caused by the notice. A preexisting condition does not bar recovery for harm caused or worsened by the violation. Dawson, 390 F.3d at 1149–50.

The Court awards $1,000 in emotional-distress damages for the February notice. This amount compensates the harm established by the record. It does not reimburse an estimated therapy bill or compensate harm arising solely from the April lockout, which did not violate the stay.

Debtor did not establish with reasonable certainty the amount of therapy, travel, or other expenses caused by the February notice. Those economic damages are denied. Roman, 283 B.R. at 8–9.

2. *Attorney fees and costs*

Actual damages under § 362(k) include reasonable attorney fees and costs incurred responding to a willful stay violation and pursuing damages. In re Schwartz-Tallard, 803 F.3d 1095, 1099–1101 (9th Cir. 2015) (en banc). Debtor is entitled to reasonable fees and costs attributable to the February notice.

Within 21 days after entry of this order, Debtor must file and serve an itemized request identifying the services performed, time spent, rates charged, and costs incurred. The request must identify work related to the February notice, work involving multiple claims, and work attributable solely to unsuccessful claims, including the second notice. The Court will determine a reasonable allocation of work involving both successful and unsuccessful claims. Jaycees may object within 14 days after service. The Court reserves determination of the amount.

*3. Punitive damages*

Punitive damages are discretionary and require more than a willful violation. They may be awarded when a creditor acts with reckless or callous disregard for the law or the debtor's rights. Bloom, 875 F.2d at 228.

Jaycees acted with reckless disregard for Debtor's right under § 362(a)(6) to be free from efforts to collect prepetition debts while the automatic stay was in effect. Jaycees knew of the bankruptcy and identified the case in its notice. It demanded payment and threatened to auction the home based on increased storage charges that had not become due, without accounting for Debtor's prepaid rent. (Debtor Ex. D; Deken Decl. ¶ 17; ECF No. 45 at 6). The finding of reckless disregard rests on this combination of circumstances, not merely Jaycees' knowledge of the bankruptcy or its use of the statutory notice form. Jaycees threatened the loss of Debtor's home to obtain payment of charges unsupported by the storage agreement and its own payment records.

Jaycees' acknowledgment that the notice was premature and its offer to rescind it warrant a modest award. (ECF No. 45 at 6). The Court awards $1,000 in punitive damages under § 362(k)(1) to deter similar conduct. This award rests solely on the February notice and does not punish Jaycees for the April lockout.

**G. Additional civil-contempt sanctions are not warranted**

Civil contempt requires clear and convincing evidence of a violation of a specific and definite court command. The automatic stay qualifies as such a command. In re Dyer, 322 F.3d 1178, 1190–91 (9th Cir. 2003). Contempt sanctions compensate loss or compel compliance; § 105(a) does not authorize significant punitive sanctions for a stay violation. Id. at 1192–95.

The April lockout did not violate the stay and therefore does not support contempt sanctions. Debtor also did not establish by clear and convincing evidence that Jaycees violated the May order's access provision. (ECF No. 70; Debtor Decl. ¶ 29; Deken Decl. ¶¶ 28–29).

For the February notice, the Court has awarded emotional-distress damages and provided a procedure to determine reasonable attorney fees and costs. Those remedies compensate the harm established here. Debtor has not shown an additional uncompensated loss or a present need for sanctions to compel compliance. The Court therefore declines additional civil-contempt sanctions without deciding whether Jaycees' lien-perfection theory supplied an objectively reasonable basis for doubt. See Taggart v. Lorenzen, 587 U.S. 554, 561–65 (2019); In re Jeong, 2020 WL 1277575, at *4 & n.3 (B.A.P. 9th Cir. Mar. 16, 2020) (assuming without deciding that Taggart applies to contempt for violating the automatic stay).

The separate punitive award rests on § 362(k), not civil-contempt authority under § 105(a). The objective contempt standard does not replace the statutory willfulness standard applied above.

## CONCLUSION

For these reasons, **IT IS ORDERED**:

1. Debtor's motions (ECF Nos. 32 and 76) are **GRANTED IN PART** under § 362(k) as to the February 18, 2025, lien notice. Debtor is awarded $1,000 in emotional-distress damages and $1,000 in punitive damages against Jaycees. Debtor is also entitled to reasonable attorney fees and costs attributable to that violation under the procedure stated above. The amount of fees and costs remains reserved.
2. Debtor's requests for other economic damages and additional civil-contempt sanctions arising from the February notice are **DENIED**.

3. Debtor's requests for damages and civil-contempt sanctions arising from the April lockout are **DENIED** because the stay had terminated as to enforcement of the Permanent Writ of Restitution before the lockout.
4. Debtor's requests for relief based on the second lien notice, alleged collection communications, and later access restrictions are **DENIED**.
5. The Court does not decide ownership of the manufactured home or the disputed transfers at issue in Adversary Proceeding No. 25-01110.

**IT IS SO ORDERED**.

Copies sent to all parties via CM/ECF Electronic Filing.

# # #